[Cite as *In re M.R.*, 2011-Ohio-3733.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

IN RE: M.R., JR.                                          :

                                                         :         C.A. CASE NO. 2010 CA 64

                                                         :         T.C. NO.    N39671

                                                         :         (Civil appeal from Common
                                                                    Pleas      Court,      Juvenile
Division)

                                                         :

                                                         :

                                           . . . . . . . . . .

## **O P I N I O N**

Rendered on the ___29th___ day of ___July___, 2011.

                                           . . . . . . . . . .

ALICE K. DEWINE, Atty. Reg. No. 0084071, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

TYLER D. STARLINE, Atty. Reg. No. 0078552, 260 North Detroit Street, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

                                           . . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** Appellant-father appeals a decision of the Greene County Court of Common

Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of

his son, M.R., to the Greene County Children Services Board (hereinafter "GCCSB"). The juvenile court issued it decision granting permanent custody to GCCSB on August 6, 2010. Father filed a timely notice of appeal of the trial court's decision on September 3, 2010.

I

{¶ 2}    M.R. was born on March 8, 2001, to Father and K. R. (hereinafter "Mother"). In June of 2007, Mother had custody of M.R. when she gave birth to another child, J.R., with her boyfriend at that time, N. H. GCCSB became involved with M.R. and J.R. after it was discovered that J.R. was born addicted to methadone. Father was incarcerated at the time. GCCSB developed a case plan for Mother to address her alleged drug and alcohol abuse in an effort to reunite her with her children.

{¶ 3}    On October 8, 2007, GCCSB obtained an ex parte order of emergency custody regarding M.R. Shortly thereafter, GCCSB filed a complaint alleging neglect and dependency with respect to M.R. On October 9, 2007, the juvenile court held a shelter care hearing and granted interim temporary custody of M.R. to GCCSB. M.R. was later adjudicated to be dependent and neglected by the juvenile court on December 18, 2007. The juvenile court subsequently granted temporary custody of M.R. to GCCSB. After a hearing on May 12, 2008, M.R. was placed with his paternal aunt and uncle by court order. After a short time, M.R. was returned to the temporary custody of GCCSB on October 8, 2008. On the same date, GCCSB placed M.R. in a foster home, where he has since resided.

{¶ 4}    Father was released from prison in November of 2007, and began living with his grandmother, W. B. During this time period, Father was added to the case plan along

with Mother. Evidence adduced during the hearing on GCSSB's motion for permanent custody established that neither parent complied with the case plan from December of 2007 through October of 2008.

{¶ 5} Moreover, in October of 2008, Mother was convicted of felonious assault and incarcerated until September of 2009. After she was released from prison, Mother initially complied with her case plan and tested negative for drug screens. However, by December of 2009, Mother became more difficult to locate for drug screens. By May of 2010, Mother was unable to maintain a stable residence and was in the process of being evicted from her third residence. The record establishes that Father failed to contact GCCSB in order to comply with the case plan from April 2009 until November of 2009. A visitation was scheduled by GCCSB in November of 2009 for Father and M.R. Father, however, was unable to attend because he was arrested and convicted for numerous drug related offenses. Father was incarcerated in January of 2010, and was not scheduled to be released until December of 2010.

{¶ 6} After placing M.R. in the foster home on October 8, 2008, GCCSB requested and obtained two extensions of temporary custody of the minor child. On March 5, 2010, GCCSB filed a motion for permanent custody of M.R. The juvenile court scheduled a hearing for August 3, 2010. On June 25, 2010, Mother submitted to a drug screen and tested positive for amphetamines, marijuana, cocaine, opiates, and oxycodone while she was also approximately eight months pregnant with a third child. Mother gave birth prior to the hearing, and the infant was promptly removed from her custody.

{¶ 7} On March 15, 2010, the juvenile court appointed counsel for Father who was

still serving a prison term. On July 27, 2010, Father filed a motion to continue the hearing scheduled for August 3, 2010, or in the alternative, a motion to be transported from prison to attend the hearing. The juvenile court subsequently denied Father's motion in its entirety in a decision filed on July 28, 2010. We note that the Guardian Ad Litem (hereinafter "GAL") appointed by the juvenile court to represent M.R. recommended that permanent custody of M.R. be granted to GCCSB in a report also filed on July 28, 2010.

{¶ 8} The hearing on GCCSB's motion for permanent custody was held before the juvenile court on August 3, 2010. Mother attended and was represented by appointed counsel. Father was not present due to his incarceration but was represented by appointed counsel who made a statement on his behalf regarding his desire to be reunited with M.R. Father's counsel also orally renewed his motion for a continuance of the custody hearing until after he was released from prison, but the court denied his motion. On August 6, 2010, the juvenile court issued a decision granting GCCSB's motion for permanent custody of M.R.

{¶ 9} It is from this judgment that Father now appeals.[1]

II

{¶ 10} Father's first assignment of error is as follows:

{¶ 11} "THE JUVENILE COURT ERRED BY DENYING APPELLANT FATHER'S REQUESTS TO BE TRANSPORTED TO THE PERMANENT CUSTODY HEARING."

---

[1]Mother is not involved in the instant appeal nor has she filed a separate appeal of the juvenile court's decision granting permanent custody of M.R. to GCCSB.

{¶ 12} In his first assignment, Father contends that the juvenile court erred when it denied his request to be transported from prison so that he could attend M.R.'s permanent custody hearing on August 3, 2010. Specifically, Father argues that the juvenile court violated his due process rights by denying his request for conveyance from prison to attend the hearing. In its judgment entry, the juvenile court noted that Father had submitted his continuance request pro se despite that he "had assigned counsel since March 15, 2010."

{¶ 13} We recently addressed a similar situation in *In re R.D.*, Clark App. No. 08-CA-26, 2009-Ohio-1287 at ¶s 12-13, wherein we stated the following:

{¶ 14} " 'A trial court has discretion to decide whether to proceed with a permanent custody hearing without having an incarcerated parent conveyed.' *In the Matter of Joseph P.*, Lucas App. No. L-02-1385, 2003-Ohio-2217, at _51, citing *State ex rel. Vanderlaan v. Pollex* (1994), 96 Ohio App.3d 235, 236. Therefore, we will not reverse such a decision absent an abuse of discretion. 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 (citations omitted).

{¶ 15} "[T]he failure to transport a parent from the prison to a permanent custody hearing does not violate a parent's due process rights 'when: (1) the parent is represented at the hearing by counsel, (2) a full record of the hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition.' *In the Matter of Joseph P.*, at _52, citing *In the Matter of Leo D., Deandre E., and Desandra E.* (March 15, 2002), Lucas App. No. L-01-1452."

{¶ 16} In its judgment entry, the juvenile court relied upon a three-factor balancing test in order to determine whether an inmate should be present at a custody termination proceeding to which he or she is a party: to wit: 1) the private interest affected; 2) the risk of erroneous deprivation and the probable value of additional safeguards; and 3) the governmental burden of additional procedural requirements. *Matthews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed2d 18. In light of the enumerated factors, the juvenile court stated as follows:

{¶ 17} "The termination of parental rights is a significant private interest. The Court finds, however, that there is a low risk of erroneous deprivation, based upon [Father] having legal representation, the child himself having legal representation (due to his wishes being contrary to the recommendations of his GAL), the record of the proceedings will be available for review, and there are other means for [Father] to state his position to the Court, e.g. written interrogatories. The Court also finds that the burden of additional procedural safeguards created by having [Father] at the hearing is significant."

{¶ 18} The record in the instant case establishes that Father was represented by counsel at the hearing held on August 3, 2010. Moreover, a full record was made of the hearing, and Father submitted his testimony by way of a statement made on the record by his counsel. Although permitted by Juv. R. 25(B), Father did not request leave of court to conduct a deposition. Father does not identify any additional testimony he would have provided that would have had a material effect on the outcome of the permanent custody hearing.

{¶ 19} Father asserts that the juvenile rules do not specifically allow for the filing of

written interrogatories by the incarcerated parent. The court, however, only mentioned written interrogatories as an example by which Father could state his position at the hearing without being physically present. We note that written interrogatories were used by an incarcerated parent to address the court at a termination of custody hearing in *In re R.D.*, Clark App. No. 08-CA-26, 2009-Ohio-1287. Nevertheless, Father did not utilize the deposition tool clearly available to him under Juv. R. 25(B), which would accomplish the same purpose. Accordingly, we cannot find that the juvenile court abused its discretion in denying Father's request to be transported to the permanent custody hearing.

{¶ 20} Father's first assignment of error is overruled.

III

{¶ 21} Father's second and final assignment of error is as follows:

{¶ 22} "THE JUVENILE COURT ERRED BY GRANTING PERMANENT CUSTODY TO THE GREENE COUNTY CHILDREN'S SERVICES BOARD."

{¶ 23} In his final assignment, Father argues that the trial court erred when it awarded permanent custody of M.R. to GCCSB and terminated his parental rights to the minor child. Father asserts that permanent custody to GCCSB was not in M.R.'s best interests. Father points out that testimony was adduced at the hearing that M.R. expressed a desire to live with Father upon his release from prison. Father argues that M.R. should have been placed in the temporary custody of Mother or Father's grandmother, W. B., until he was released from prison.

{¶ 24} R.C. 2151.413 dictates when a children services agency may seek permanent custody of a child. With some exceptions, R.C. 2151.413(D) generally requires a children

services agency to pursue permanent custody of a child that has been in the agency's temporary custody for twelve or more months of a consecutive twenty-two month period. Here, the record establishes that M.R. had been in temporary custody for sixteen months, clearly in excess of twelve months of a consecutive twenty-two month period, at the time that GCCSB filed its motion for permanent custody on March 5, 2010.

{¶ 25} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period at the time the motion for permanent custody is filed, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d). The court need not consider whether the child can be placed with either parent within a reasonable time or should not be placed with the child's parents, as would be required under R.C. 2151.414(B)(1)(a). *In re C. W.*, 104 Ohio St.3d 163, 166-167, 2004-Ohio-6411, at ¶21. All of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.*, Montgomery App. No. 21749, 2007-Ohio-186, ¶9.

{¶ 26} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more

months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 27} After a thorough review of the record, we find that the juvenile court properly considered all of the factors in R.C. 2151.414(D) when it determined that it was in the best interests of M.R. to be placed in the permanent custody of GCCSB. While acknowledging that M.R. expressed a desire to reunited with his parents at some point in the future, the juvenile court found that the child was currently in a foster home where he was being cared for and nurtured. We note that the evidence adduced at the hearing established that M.R. suffered from ADHD, as well as other developmental delays. M.R.'s foster mother testified that she and her husband had taken special classes in order to help M.R. cope with and possibly overcome his problems. M.R.'s foster mother also testified that the child was welcome in her home "as long as he liked." M.R.'s GAL also recommended that permanent custody of the child be awarded to GCCSB.

{¶ 28} The record also establishes that there are no suitable relative placements available. Although Father suggests his grandmother as a suitable placement for M.R., W.B. was eighty years old at the time of the hearing. Moreover, W.B. specifically informed the caseworker that she was unable to care for M.R.

{¶ 29} As previously stated, the juvenile court found that M.R. had been in the temporary custody of GCCSB for more than twelve of twenty-two consecutive months. The record established that neither parent had custody of M.R. since September of 2007.

{¶ 30} Regarding temporary placement with Mother until Father was released from prison, the juvenile court found that Mother had an ongoing problem with drug abuse and that she repeatedly refused treatment for her problem. Additionally, Mother failed to comply with her case plan, repeatedly failing drug screens and missing visitations with M.R. At the time of the hearing, Mother did not have custody of her other two children, in addition to M.R. We note that Mother also failed to appeal the juvenile court's grant of permanent custody of M.R. to GCCSB. Clearly, the juvenile court believed, and with good reason, that Mother was not suitable as a placement option for M.R.

{¶ 31} With respect to Father, the juvenile court found that his "two prison terms have precluded him from meeting case plan goals and his current incarceration renders him incapable of being a placement option." We also note that Father did not comply with the case plan formulated by the GCCSB when he was not incarcerated.

{¶ 32} Lastly, the juvenile court held that, pursuant to R.C. 2151.415(D)(4), it did not have the authority to grant a third extension of temporary custody of M.R. to GCCSB. We note that R.C. 2151.353(F) provides that a children services agency may take temporary custody of a dependent child for a period of one year unless an extension of that custody is granted. R.C. 2151.415(D)(1) permits a trial court to grant an extension of temporary custody of up to six months. However, R.C. 2151.415(D)(4) states that "no court shall grant an agency more than two extensions of temporary custody***." "It is axiomatic that when it is used in a statute, the word 'shall' denotes that compliance with the commands of that statute is mandatory." *Department of Liquor Control v. Sons of Italy Lodge 0917* (1992), 65 Ohio St.3d 532, 534. The statute clearly limits a grant of temporary custody to a

period of two years – an initial period of one year, followed by up to two extensions of six months each. *In re D.J.*, Montgomery App. No. 21666, 2006-Ohio-6304.

{¶ 33} The record establishes that Father's release date from prison was scheduled for December of 2010. GCCSB's *second* extension for temporary custody of M.R. was set to expire on October 8, 2010. By statute, the juvenile court was without authority to grant a third extension of temporary custody to GCCSB. Father would have remained incarcerated and, therefore, unable to take custody of M.R. when the second extension expired in early October of 2010. In light of the foregoing analysis, we conclude that the juvenile court did not abuse its discretion when it awarded permanent custody of M.R. to GCCSB.

{¶ 34} Father's second assignment of error is overruled.

IV

{¶ 35} All of Father's assignments of error having been overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Alice K. DeWine
Tyler D. Starline
Hon. Robert W. Hutcheson