[Cite as *In re A.S.*, 2013-Ohio-294.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE:                                      :
                                            :        Appellate Case Nos. 25313
        A.S., K.S. and W.S.                 :                        25317
                                            :
                                            :        Trial Court Case Nos. JC 07-3714
                                            :                          JC 07-3716
                                            :                          JC 07-3717
                                            :
                                            :        (Juvenile Appeal from
                                            :         Common Pleas Court)
                                            :
                            . . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of February, 2013.

. . . . . . . . . .

JEAN M. STEIGERWALD, Atty. Reg. #0036741, Post Office Box 373, Dayton, Ohio
45409-0373
        Attorney for Appellant, T.S.

RANDALL L. STUMP, Atty. Reg. #0020613, 131 North Ludlow Street, Suite 1200, Dayton,
Ohio 45402
        Attorney for Appellant, W.S.

JAMES S. ARMSTRONG, Atty. Reg. #0020638, 131 North Ludlow Street, Suite 386,
Dayton, Ohio 45402
        Attorney for Appellees, minor children, A.S. and W.S.

KATHRYN L. BOWLING, Atty. Reg. #0084442, 111 West First Street, Suite 581, Dayton,

Ohio 45402

Attorney for Appellee, minor child, K.S.

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422

Attorney for Appellee, Montgomery County Children Services

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1} T.S. and W.S. appeal separately from the trial court's judgment entry overruling their objections to a magistrate's decision and awarding Montgomery County Children Services ("MCCS") permanent custody of their children, A.S., K.S., and W.S.[1] They contend that the evidence does not support the court's finding that the award of custody to MCCS is in the best interest of the children. We conclude that there is credible evidence in the record to support the decision. Accordingly, the judgment of the juvenile court is Affirmed.

## I. The Course of Proceedings

{¶ 2} The record reflects that the trial court adjudicated the children dependent in response to a complaint filed by MCCS in 2007. After obtaining temporary custody, MCCS moved for permanent custody in April 2009. A magistrate held a hearing on the motion. Based on the evidence presented, the magistrate awarded MCCS permanent custody of the children. The parents filed objections to the magistrate's decision. The juvenile court held a hearing prior to ruling on the objections. During the hearing, the parties stipulated that a change of circumstances had occurred since the magistrate's award of permanent custody to the agency.

[1] T.S. and W.S. have other children who are not the subject of this appeal. In this opinion, "the children" refers to A.S., K.S., and W.S., who are the subject of this appeal.

Specifically, the children's foster parent at that time had indicated that she was willing and able to adopt all three children. Subsequently, she decided that she could not adopt the children as previously planned. Thus, the court dismissed the objections and the matter was remanded to the magistrate for further evidence regarding the best interest of the children.

{¶ 3} A hearing was conducted in July 2011 following which the magistrate again awarded permanent custody of the children to the agency. The parents filed objections, which the juvenile court overruled. The parents appeal.

## II. There Is Evidence in the Record to Support the Trial Court's Finding, by Clear and Convincing Evidence, that an Award of Permanent Custody to MCCS Is in the Best Interests of the Children

{¶ 4} The parents' sole assignment of error states as follows:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO MONTGOMERY COUNTY CHILDREN SERVICES BECAUSE THAT AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AT ISSUE IN THIS APPEAL.

{¶ 5} T.S. and W.S. contend that the evidence does not support the trial court's finding that awarding permanent custody to MCCS is in the best interest of the children.

{¶ 6} In *In re M.R.*, 2d Dist. Greene No. 2010 CA 64, 2011-Ohio-3733, ¶ 24-26, we addressed the standards for determining motions for permanent custody:

R.C. 2151.413 dictates when a children services agency may seek

permanent custody of a child. With some exceptions, R.C. 2151.413(D) generally requires a children services agency to pursue permanent custody of a child that has been in the agency's temporary custody for twelve or more months of a consecutive twenty-two month period. * * *

* * * If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period at the time the motion for permanent custody is filed, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d). The court need not consider whether the child can be placed with either parent within a reasonable time or should not be placed with the child's parents, as would be required under R .C. 2151.414(B)(1)(a). *In re C. W.,* 104 Ohio St.3d 163, 166–167, 2004–Ohio–6411, at ¶ 21. All of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.,* Montgomery App. No. 21749, 2007–Ohio–186, ¶ 9.

R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need

for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 7} "A reviewing court must affirm a trial court's decision regarding permanent custody unless it is unsupported by clear and convincing evidence, a level of proof that produces a firm belief as to the facts sought to be established." *In re T.J.*, 2d Dist. Montgomery No. 25022, 2012-Ohio-3399, ¶ 25. If the juvenile court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," an appellate court may not reverse the judgment. *In re A.S.,* 2d Dist. Montgomery No. 22269, 2007–Ohio–6897, ¶ 15, quoting *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 8} The record demonstrates that K.S. and A.S. are residing with the same foster family and that they are bonded to that family. W.S. is residing with a separate foster family and is bonded to that family. The foster parents are willing to adopt the children and are also willing to maintain relationships between the siblings following adoption.

{¶ 9} While the children are aware that T.S. and W.S. are their parents, they do not appear to have a strong bond with either of their parents. The children have been in the temporary custody of the MCCS for almost five years; at the time of the final hearing, they had been in custody for four years. During that time the parents were inconsistent, at best, with their visitations. From October 2009 through November 2010, the parents exercised only seven scheduled visits with the children. There was a period of six months during which there were no visits. From November 2010 until the final hearing in July 2011, the mother

exercised seventeen out of fifty-three scheduled visits, while the father exercised only ten. The parents cancelled two of three scheduled overnight visits.

{¶ 10} At the time of the hearings, the children were ages eight, six and four, and the court determined that they were too young to express their wishes meaningfully. A guardian ad litem appointed to represent the children recommended that the children be returned to their parents. The GAL testified that she had been to a "couple" of visits in the last year and "things when I have been there, have worked out pretty well." However, the father was not present at these visitations. She further testified that she did not make an attempt to speak with the children regarding their wishes, but noted that they "really aren't clear at all about where they want to live." She testified that she did not have any concerns regarding the ability of W.S. and T.S. to parent the children. She further testified that she had not spoken to any of the therapists treating the children in the year prior to the hearing. She also testified that she had not observed the children in their current foster homes.

{¶ 11} . The record shows that a case plan was established, intended to help T.S. and W.S. regain custody. However, the mother never completed a requested parenting assessment, and she was not attending counseling as requested. The parents failed to provide documentation regarding their bills, income and budgeting, as required by the case plan. They demonstrated resistance to that requirement. The caseworker was not able to go into the parents' home after the father made a threatening comment toward her. The parents were required to undergo marriage counseling due to the instability of their marriage, but failed to do so. Indeed, some visitation was missed because, following an argument, the father left the mother and took at least one of their other children who was living in their home out of the

county. The record also shows that when MCCS made referrals to two different reunification specialists, the parents cancelled all scheduled meetings and never met with either of the specialists.

{¶ 12} During the visitations that actually took place at MCCS, the parents did not engage the children and relied on agency staff or foster parents for guidance and help with managing the children. The visits were "loud and chaotic," and an MCCS supervisor had to intervene on a couple of occasions when the children were being allowed to run along the backs of couches. The father used physical discipline on the children during visits, despite having been informed that he should not do so. One child even presented with bruises following the father's discipline. The father informed MCCS staff that he would not refrain from using physical discipline. There is evidence that the father becomes angry when the caseworker attempted to correct his parenting techniques. The evidence shows that the father permitted A.S. to bully K.S., merely observing the bullying without intervening. The record also reflects that the father would be the primary caregiver for the children if they were returned to their parents.

{¶ 13} All of the children have special needs with regard to their mental health care, and require therapy for those issues. The parents have shown no interest in the therapy the children have received. The only contact they had with any of the therapists treating the children involved a threatening phone call to one of the therapists made by the mother.

{¶ 14} A.S. has some serious dental problems, which require treatment. During one visitation, the parents were instructed not to give A.S. soda or candy, because she had an abscessed tooth that was scheduled to be pulled. The parents ignored the instruction and gave

the child soda. The record also shows that K.S. lacks self-esteem and that the father has made disparaging remarks to her about her weight, at least some of which were delivered in the presence of A.S.

{¶ 15} The juvenile court found that the children are strongly bonded to their foster parents. The court found that the parents have not met their case plan objectives and have not demonstrated an ability to care for the children or to meet their needs with regard to attending therapy. The court noted that the parents had failed to visit on a consistent basis during the more than four years that the children had been in the temporary custody of MCCS. The court found that the children had a need for legally secure placement and that such placement was best met by awarding permanent custody to MCCS.

{¶ 16} We conclude that there is competent, credible evidence in the record to support the trial court's finding, by clear and convincing evidence, that an award of permanent custody to MCCS is in the best interests of the children. Accordingly, the parents' sole assignment of error is overruled.

### III. Conclusion

{¶ 17} The sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Jean M. Steigerwald
Randall L. Stump
James S. Armstrong
Kathryn L. Bowling
Mathis H. Heck, Jr.
Michele D. Phipps
Hon. Nick Kuntz