[Cite as *In re L.C.*, 2016-Ohio-8188.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

IN RE:  L.C. and R.C.

:
:
:    C.A. CASE NOS.   27174 and 27175
:
:    T.C. NOS. 2014-5781 and 2013-6439
:
:    (Civil Appeal from Common Pleas
:     Court, Juvenile Division)
:
:
:

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____16th____ day of _____December_____, 2016.

. . . . . . . . . .

MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Appellee, Montgomery County Children's Services

JAMES S. ARMSTRONG, Atty. Reg. No. 0020638, 131 N. Ludlow Street, Suite 386 Talbott Tower, Dayton, Ohio 45402
     Attorney for Appellant, D.C.

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Father appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of two children, R.C. and L.C., to Montgomery County Children Services (MCCS).   For the following reasons,

the judgment of the trial court will be affirmed.

## I.    Procedural History

**{¶ 2}**  R.C. and L.C. share the same parents, who were not married.   In October 2013, R.C., who was then four months old, was placed in the temporary custody of MCCS when Mother was arrested for child endangering due to her drug and alcohol use.   In January 2014, R.C. was adjudicated dependent and neglected and was placed in the temporary custody of his paternal grandmother.   L.C. was born in July 2014 and tested positive for drugs at birth.   He was adjudicated to be abused and neglected and was placed in the temporary custody of MCCS.

**{¶ 3}**  In August 2014, Grandmother lost her housing, and R.C. was placed in foster care; L.C. was placed in the same foster home.

**{¶ 4}**  MCCS filed a motion for permanent custody of R.C. on January 3, 2015. On March 13, 2015, Father filed a motion for legal custody of R.C. and L.C.; in the alternative, he requested that custody be given to Grandmother.   Grandmother also filed a motion for permanent custody of the children.   MCCS filed a motion for permanent custody of L.C. on April 6, 2015.

**{¶ 5}**   On April 24, 2015, a permanent custody hearing was held for both children. Neither Father nor Mother was present, but both were represented by counsel; Father was incarcerated in the Montgomery County Jail at that time, having been charged with three counts of rape of a child under the age of ten.   (Tr. 30.)   At the hearing, Father's attorney requested that his client be conveyed to the courtroom, but the request was denied due to counsel's failure to properly and timely make the request and due to the Sheriff's Department's insufficient staffing to bring Father to the hearing and stay with him

during the hearing that day. Father's attorney also requested a continuance, which was denied. Grandmother, the foster mother, the caseworker, and Mother's psychologist testified at the hearing. The guardian ad litem filed several reports that were before the magistrate and responded to Father's objections, consistently recommending that the children remain in the custody of MCCS, but she did not testify at the hearing.

{¶ 6} On June 12, 2015, the magistrate granted MCCS's motion for permanent custody of the children and denied Father's and Grandmother's motions for legal custody. Father and Mother filed objections to the magistrate's decision. On June 8, 2016, the trial court overruled the objections and granted permanent custody to MCCS.

{¶ 7} Father appeals, raising two assignments of error. (Neither Mother nor Grandmother is a party to this appeal.) Father's assignments are directed to alleged due process errors in the proceedings, rather than the court's ultimate resolution of the custody issue. Specifically, Father claims that he was denied the effective assistance of counsel due to his attorney's failure to have him conveyed from jail to the permanent custody hearing and that the trial court abused its discretion in denying his request for a continuance of that hearing.

## II. Parental Rights in Permanent Custody Proceedings

{¶ 8} The United States Supreme Court has held that the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner" prior to being deprived of a liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), citing *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not

involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Id.*, citing *Joint Anti-Fascist Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). This standard has frequently been applied to cases involving the termination of parental rights. *See, e.g., In re W.E.E.*, 10th Dist. Franklin No. 15AP-167, 2016-Ohio-4552; *In re R.L.,* 2d Dist. Greene Nos. 2012 CA 32 and 2012 CA 33, 2012-Ohio-6049; *In re G.C.,* 8th Dist. Cuyahoga No. 83994, 2004-Ohio-5607.

{¶ 9} *Mathews* held that determining whether "the specific dictates of due process" have been satisfied generally requires consideration of three distinct factors: 1) the private interest affected; 2) the risk of erroneous deprivation and the probable value of additional safeguards; and 3) the governmental burden of additional procedural requirements. *Id.* at 334-335.

{¶ 10} Applying *Mathews* to hearings involving the termination of parental rights, Ohio courts have recognized that parents have a constitutionally-protected right to be present at permanent custody hearings, but they have also recognized that such a right is not absolute if the parent is incarcerated. *See, e.g., In re A.L.W.,* 9th Dist. Summit No. 27312, 2016-Ohio-911; *In re M.M.*, 4th Dist. Meigs No. 14 CA 6, 2014-Ohio-5111. With the due process considerations set forth in *Mathews* in mind, a trial court has discretion to decide whether to hold a permanent custody hearing without having an incarcerated parent conveyed to the hearing. *In re R.L.* at ¶ 27; *In re R.D.,* 2d Dist. Clark No. 08-CA-26, 2009-Ohio-1287, ¶ 12.

{¶ 11} A parent's due process right to be heard prior to termination of parental rights can be satisfied by arranging for his or her presence at the permanent custody

hearing or by an alternate method of meaningful participation. *See In re S.A.,* 2d Dist. Clark No. 07-CA-110, 2008-Ohio-2225, ¶ 12; *In re Roque,* 11th Dist. Trumbull No. 2005-T-138, 2006-Ohio-7007, ¶ 18. A parent's attorney has a duty to protect the parent's due process rights by ensuring meaningful participation at the permanent custody hearing. *In re Joseph P.,* 6th Dist. Lucas No. L-02-1385, 2003-Ohio-2217, ¶ 52; *In re S.A.,* 2d Dist. Clark No. 07-CA-110, 2008-Ohio-2225, ¶ 5; *In re K.T.*, 9th Dist. Lorain No. 14 CA 010646, 2015-Ohio-2304, ¶ 16. The failure to transport a parent from prison to a permanent custody hearing does not violate a parent's due process rights when: 1) the parent is represented at the hearing by counsel; 2) a full record of the hearing is made; and 3) any testimony that the parent wishes to present is presented by deposition or by other means. *In re M.R.,* 2d Dist. Greene No. 2010 CA 64, 2011-Ohio-3733, ¶ 15, citing *In re Joseph P.* at ¶ 51.

### III.   Ineffective Assistance of Counsel

{¶ 12}  The test for ineffective assistance of counsel used in criminal cases is equally applicable to permanent custody proceedings. *In re J.P.,* 2d Dist. Montgomery No. 27093, 2016-Ohio-5351, ¶ 65. Under the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the represented party must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that he or she was prejudiced by counsel's performance. *See also State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Proof of both parts of the test is necessary to establish the claim of ineffective assistance of counsel. *Bradley* at 142.

{¶ 13}  The standards for ineffective assistance of counsel "do not establish

mechanical rules"; rather, the focus is the fundamental fairness of the proceeding whose result is being challenged. *Strickland* at 670. To establish the first prong of ineffective assistance, there must be "a substantial violation" of one of counsel's essential duties to his or her client, *Bradley* at 141, and the adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. *Strickland* at 688. Trial counsel is entitled to a presumption of competency. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). To establish the second prong of ineffective assistance, the represented party must demonstrate that, but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Strickland* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

{¶ 14} With these standards in mind, we will examine whether Father's due process rights were violated and whether he was denied the effective assistance of counsel.

### IV. Denial of Motion to Convey

{¶ 15} In *In re S.A.,* 2d Dist. Clark No. 07-CA-110, 2008-Ohio-2225, the trial court refused to return Mother from prison to testify at a permanent custody hearing related to her child and denied a three-month continuance so that she could testify after her release. Mother was represented by counsel at the hearing, but "the only evidence that counsel offered on her behalf was a brief questionnaire that she had completed for counsel early in his representation." On appeal, we held that counsel's representation had been deficient, because he had failed to obtain more meaningful input from Mother, such as a sworn statement, deposition, or participation via telephone, in lieu of her live testimony,

and because "[t]he bare statements offered in the questionnaire begged further explanation, which only [Mother] could provide." *Id.* at ¶ 11-12. We further held that counsel's failure to protect Mother's right to meaningful participation rendered the proceedings "fundamentally unfair." Thus, both prongs of *Strickland* had been satisfied, and Mother was denied the effective assistance of counsel.

{¶ 16} In *In re K.T.*, 9th Dist. Lorain No. 14 CA 010646, 2015-Ohio-2304, counsel for an incarcerated Father did not file a motion to transport Father to the permanent custody hearing because, with a previous motion involving a different type of hearing, the court had denied such a motion. Counsel also did not arrange for Father's meaningful participation in the hearing by some other means. The appellate court found that counsel acted deficiently in failing to ensure Father's meaningful participation.

{¶ 17} The court in *K.T.* also found that Father was prejudiced by counsel's ineffectiveness because the evidence in favor of terminating parental rights had not been overwhelming, there was a relative who was willing to take custody of the child (and Father supported such an arrangement), the guardian ad litem "wrestled with" whether the relative should be given legal custody, and Children Services pointed to no obvious problems with the relative. There were also discrepancies between the evidence presented at trial and the trial court's written decision, which undermined the appellate court's confidence in that decision. The appellate court found that Father had been denied the effective assistance of counsel in the proceedings that resulted in the termination of his parental rights.

{¶ 18} In other cases, we have held that it was appropriate for the trial court to deny an incarcerated parent's request to be conveyed to a permanent custody hearing.

In *In re R.L.*, 2d Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, Mother and Father were serving lengthy, mandatory prison sentences. Their wishes (favoring placement with a relative) were known to the court, they had not requested to conduct depositions and had not filed affidavits with the court, and they had not identified any testimony they would have provided that would have materially affected the outcome of the hearing. We found that the trial court did not abuse its discretion in denying Father's request to be conveyed from prison to the hearing.

{¶ 19} In *In re M.R.*, 2d Dist. Greene No. 2010 CA 64, 2011-Ohio-3733, the trial court denied Father's requests to be transported to the hearing or for the hearing to be continued until he was released from prison (approximately five months later). He was represented by counsel, who made a statement on his behalf. Father did not identify what additional testimony, if any, he would have provided beyond the statement made by his attorney. On appeal, we rejected Father's argument that the trial court had abused its discretion in denying his request to be transported to the hearing.

{¶ 20} At the hearing regarding permanent custody of R.C. and L.C., Father's attorney acknowledged that Father was in the Montgomery County Jail, as he had been for some time. Counsel indicated that he had sent an email to court personnel requesting that Father be conveyed to the court for the hearing, but he acknowledged that the email had been sent to an incorrect address. The record is unclear as to when the email was sent and when the attorney became aware that it did not reach the intended recipient. Counsel noted that Father had been conveyed to the courtroom on a previous occasion without the filing of a motion and stated that Father wished to be present at the hearing. In response, the court stated that the appropriate method for requesting a

conveyance is by motion, and that, if an email had previously been effective for this purpose, it was "luck." The court also noted that conveying a person from jail to court for a hearing involves not only the transportation by a deputy, but also the presence of a deputy throughout the hearing, and that staffing issues require at least three days' notice to accommodate such a conveyance.[1]

{¶ 21} Moreover, because he apparently believed that Father would be allowed to be present at the hearing, Father's attorney had not made arrangements to offer Father's input by another means, such as a deposition, affidavit, or video or telephone conferencing. Counsel did request a continuance, but the trial court denied the request, citing "proper notice" of the hearing; it is also apparent from the record that numerous other attorneys and witnesses were present for the hearing.

{¶ 22} Under these circumstances, we agree with Father that counsel's representation and, in particular, his efforts to have Father present at the hearing or otherwise to ensure his meaningful participation fell below an objective level of reasonableness. However, to find ineffective assistance of counsel, we must find not only that counsel's representation was deficient, but also that his client suffered prejudice as a result of that deficiency.

{¶ 23} Father's mother (Grandmother), who had cared for the older child for one year before he was placed in foster care, testified that she and her son (Father) had lived together with the child, that Father had a "great relationship" with the child, and that Father

---

[1] The court referred to a "local rule" that requires a minimum of three days' notice prior to a requested conveyance, but it did not specifically cite the rule. Although there is a local rule related to the filing of continuances, Mont. Juv. Ct. Rule 5.8.2 and 5.8.3, we are not aware of a local rule addressing a local prisoner's conveyance.

had helped to care for him. Grandmother also testified that Father "tries hard to be a dad," that he had been employed until his arrest, that he and the children would be able to live with her upon his release from incarceration (contingent upon her finding housing), and that Father had a job to which he could return if/when he was released. Grandmother also testified to her belief that Father was not using drugs and had no mental health issues.

{¶ 24} Testimony from the case worker and guardian ad litem cast some doubt on Grandmother's assertions. For example, the caseworker testified that Father was not close to satisfying the case plan objectives, that his visitation with the children prior to his incarceration had been "very sporadic,' and that he had not provided any evidence of his alleged employment or clean drug screens. She also testified that a "lack of housing and stability on [Grandmother's] end" prevented placing the child with her. The children were "happy," "bonded" and "engaged" with their foster family, and the foster family was willing to adopt them.

{¶ 25} The guardian ad litem's reports also stated that Father had not completed drug and alcohol assessments, had not provided pay stubs or verification of the results of his drug screens at work, had not obtained housing, and had visited with his children less than 25% of the time prior to his incarceration. Further, the guardian ad litem stated that Father had previously been thrown out of Grandmother's house due to his drug activities.

{¶ 26} Father's brief does not suggest what evidence he might have offered if he had participated more meaningfully in the hearing, or how that evidence might have affected the outcome of the proceedings. It appears that Grandmother advocated for

Father's interests. In the absence of any evidence or even suggestion that Father's input would have shed more light on certain issues or would have differed from Grandmother's testimony, we cannot conclude that there was a reasonable probability that the result would have been different had counsel made arrangements for Father to participate more fully. Thus, he failed to satisfy the second prong of the *Strickland* test for ineffective assistance of counsel, i.e., that he was prejudiced by counsel's deficiency. Without such a showing, we cannot find ineffective assistance of counsel.

{¶ 27} The first assignment of error is overruled.

### IV. Denial of Continuance

{¶ 28} In his second assignment of error, Father asserts that the trial court abused its discretion in denying his request for a continuance.

{¶ 29} The granting or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge, which will not be reversed absent an abuse of discretion. *State v. Unger,* 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981); *In re S.F.,* 2d Dist. Montgomery No. 26865, 2016-Ohio-521, ¶ 17. The term "an abuse of discretion" is used to indicate that a court's decision is unreasonable, arbitrary and unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When considering whether the court abused its discretion in denying a continuance, any potential prejudice flowing from the denial of the requested continuance must be weighed against the court's right to control its docket and the public's interest in the efficient administration of justice. *State v. Woods,* 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24, quoting *Unger* at 67.

{¶ 30} The local rules state that a continuance will be granted only for good cause

and that a request for continuance should be made in writing "within three days" of the hearing.    Mont. Juv. Ct. Rule 5.8.2 and 5.8.3.

**{¶ 31}** There were two bases for counsel's request for a continuance at the hearing.  The first was an effort to secure Father's presence at the hearing, because counsel realized that his email request had been ineffectual.  We discussed this issue above.  Although counsel was deficient in failing to properly and timely request the conveyance, counsel did not assert to the magistrate, in the objections, or in this appeal whether or how Father would be prejudiced by his absence, nor did he suggest what evidence Father would have presented that differed from, questioned, or enhanced the evidence other witnesses, including his mother, were prepared to present. The court did not abuse its discretion in failing to grant a continuance due to Father's absence.

**{¶ 32}** The second basis for Father's requested continuance was that MCCS "just filed for permanent custody [of L.C.] two weeks ago."   While it is true that MCCS's motion for permanent custody with respect to L.C. was filed only 18 days before the hearing, the trial court noted that the notice of the hearing was issued "within the proper time limitations."   Moreover, MCCS's motion with respect to permanent custody of R.C. -- in which the issues would have been nearly identical – had been filed more than 3 months earlier, and Father's own motion for permanent custody of both children had been filed six weeks before the hearing.   And, again, Father does not allege any facts demonstrating any prejudice caused by the timing of the hearing.   The trial court could have reasonably concluded that Father had sufficient notice that his fitness as a parent and the best interests of both children would be addressed at the hearing and that a continuance was not justified by the recent MCCS motion with respect to L.C.

**{¶ 33}** The trial court did not abuse its discretion in refusing to grant a continuance.

**{¶ 34}** The second assignment of error is overruled.

## V.    Conclusion

**{¶ 35}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Meagan D. Woodall
James S. Armstrong
H.H.
Marcy Vonderwell
Hon. Nick Kuntz