[Cite as *In re S.D.*, 2025-Ohio-5172.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

IN RE:

S.D.,

ADJUDICATED DEPENDENT
CHILD.

[EMMA D. - APPELLANT]

CASE NO. 6-25-05

OPINION AND
JUDGMENT ENTRY

Appeal from Hardin County Common Pleas Court
Domestic Relations Division
Juvenile Section
Trial Court No. 2023 3001

Judgment Affirmed

Date of Decision: November 17, 2025

APPEARANCES:

*Tim Steinhelfer* for Appellant

*McKenzie J. Klingler* for Appellee

**MILLER, J.**

{¶1} Emma D., mother of S.D., appeals the January 24, 2025 judgment of the Hardin County Court of Common Pleas, Domestic Relations Division, Juvenile Section, placing S.D. in the permanent custody of the Agency. For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2} Emma D. and Hadon M. are the biological parents of S.D. On January 20, 2023, the day after his birth, the Hardin County Department of Job and Family Services ("the Agency") filed a complaint alleging that S.D. was a dependent child pursuant to R.C. 2151.04. Specifically, the complaint alleged that Emma was incarcerated at the time of S.D's birth and that Emma and Hadon admitted that S.D.'s sister, who had been living in their home, was an abused child after the child was diagnosed with a non-accidental head trauma. The Agency also made a motion requesting the trial court place S.D. in the temporary custody of the Agency. That same day, the trial court filed an ex parte emergency order granting the Agency's motion for temporary custody.

{¶3} A shelter-care hearing was held on January 24, 2023. Hadon was present at hearing; however, Emma, who was incarcerated, was not present. Upon the agreement of the parties, the trial court ordered that S.D. shall remain in the temporary custody of the Agency.

{¶4} On January 24, 2023, the trial court appointed counsel for Emma. That same day, Emma's counsel filed a motion requesting that Emma be transported to the adjudication hearing. On January 26, 2023, the trial court denied Emma's motion to be transported to the adjudication hearing. However, the trial court ordered that Emma could be present via video.

{¶5} On February 21, 2023, the State filed the initial case plan, which included Emma and Hadon as participants. The case plan was approved by the trial court on February 28, 2023.

{¶6} An adjudication hearing was held on March 7, 2023. At the hearing, Emma appeared by telephone and was represented by counsel who was present in the courtroom. At the hearing, the parties entered into a number of stipulations including that Emma was currently incarcerated having been charged with endangering children in a case involving A.M., S.D.'s sister, and that Emma was "unavailable" to parent S.D. The parties stipulated that the Agency made reasonable efforts to prevent the removal and continued removal of S.D. from the home and that it would be contrary to S.D.'s welfare and best interest to be returned to the home of the parents. Emma and Hadon then admitted that S.D. is a dependent child as defined in R.C. 2151.04 and stipulated to a finding in that regard. The trial court accepted the parents' admissions, and accordingly, adjudicated S.D. a dependent child and found that the Agency made reasonable efforts to prevent S.D.'s continued removal.

{¶7} On September 1, 2023, the Agency filed its amended case plan. Notably, Emma was not a party to the case plan due to her incarceration with a projected release date in March 2025. Emma's attorney filed a timely objection to her removal from the case plan. According to the objection Emma was sentenced to 30 months in prison as a result of her conviction for endangering children, with respect to the case involving S.D.'s older sister. However, the objection alleged that Emma would be eligible for judicial release in six months, on or about February 21, 2024, and "intends to re-engage the case plan services immediately at that time."

{¶8} On September 7, 2023, the Agency filed its amended case plan which did not include Emma as a member of the case plan, but included the provision that "Emma can be added back to the case plan so long as she reports to the [Agency] within 72 hours of release [from incarceration] and requests to be added back onto the case plan." The following day, Emma filed a motion to withdraw her objection to the amended case plan. In her motion, Emma noted that the "case plan has been . . . amended to correct the objection" and that "[t]he issue is now moot." The trial court granted Emma's motion to withdraw her objection to the amended case plan.

{¶9} At the annual review hearing held on December 21, 2023, pursuant to an agreement between the parties, the trial court continued the previous orders for a period of six months and found that the Agency employed reasonable efforts to prevent the continued removal of the child.

{¶10} On January 31, 2024, the Agency filed a motion requesting that S.D. be placed in the permanent custody of the Agency. On April 15, 2024, Hadon, who was incarcerated[1], filed a motion for transportation to the permanent-custody hearing, or, in the alternative, to be permitted to attend the hearing telephonically or virtually. The following day, the trial court granted approval for Hadon to appear remotely at the permanent-custody hearing.

{¶11} The permanent-custody hearing was held on May 17, 2024. Emma was not present at the hearing; however, her attorney was present. Hadon appeared at the hearing virtually but Hadon's attorney and Hadon's guardian ad litem[2] were physically present for the hearing. On January 24, 2025, the trial court filed its judgment entry granting permanent custody of S.D. to the Agency.

{¶12} Emma filed a timely notice of appeal. She raises a single assignment of error for our review.

**Assignment of Error**

**The trial court violated the Appellant's due process rights in its failure to allow her remote presence at the permanent custody hearing when it demonstrably had the ability to facilitate such presence.**

{¶13} In her assignment of error, Emma argues that the trial court erred by not facilitating her presence at the permanent-custody hearing. Specifically, Emma

---

[1] Hadon was indicted for endangering children on July 12, 2023 in the Hardin County Court of Common Pleas based upon injuries sustained by S.D.'s sister, A.M. (Doc. No. 75).

[2] The trial court appointed a guardian ad litem for Hadon after it was determined that he had diminished mental capacity.

contends that although she was represented by counsel at the permanent-custody hearing, she was not able to assist in her own defense. Emma alleges that because the trial court had the capability for her to appear at the permanent-custody hearing remotely, the trial court erred by not arranging for her to do so. Emma argues that because the right to parent a child is a fundamental right, her due process rights were violated in this case. For the reasons that follow, we disagree.

*Applicable Law & Standard of Review*

{¶14} "'Ohio courts have recognized that parents have a constitutionally-protected right to be present at permanent custody hearings, but they have also recognized that such a right is not absolute if the parent is incarcerated.'" *In re A.W.*, 2017-Ohio-1486, ¶ 15 (3d Dist.), quoting *In re L.C.*, 2016-Ohio-8188, ¶ 10 (2d Dist.). "Courts have further held that the failure to transport a parent from prison to a permanent custody hearing does not violate a parent's due process rights when: 1) the parent is represented at the hearing by counsel; 2) a full record of the hearing is made; and 3) any testimony that the parent wishes to present is able to be presented by deposition or by other means." *Id.*, citing *In re L.C.* at ¶ 11.

{¶15} "'A trial court has discretion to decide whether to proceed with a permanent custody hearing without having an incarcerated parent conveyed.'" *In re M.R.*, 2011-Ohio-3733, ¶ 14 (2d Dist.), *quoting In re Joseph P.*, 2003-Ohio-2217, ¶ 51 (6th Dist.). Therefore, we will not reverse such a decision absent an abuse of discretion. An abuse of discretion constitutes a decision that is unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶16} It is not disputed that Emma was represented by counsel at the permanent-custody hearing. Indeed, Emma's counsel took an active role in the proceedings and conducted cross-examination of the Agency's sole witness. Notably, her counsel at no time objected to Emma's absence from the proceedings nor did her counsel make any motion to continue the proceeding until such a time as Emma could be present. Additionally, a full record of the hearing was made, as evidenced by the full transcript of the proceeding filed along with the trial court record in the instant case.

{¶17} With respect to the third factor, Emma did not file anything with the trial court indicating her desire to present any type of testimony. Notably, there is no indication Emma was denied the ability to present disposition testimony and did not file any affidavits with the trial court. On the contrary, the parties filed a number of stipulations, and the document was signed by Emma's counsel. Included in the document were stipulations that Emma was serving a 30-month sentence for endangering children and is scheduled to be released on March 5, 2025 and is currently unavailable to parent S.D. Moreover, Emma does not identify any additional testimony she would have provided that would have materially affected

the outcome of the proceeding. *See In re R.L.*, 2012-Ohio-6049, ¶ 29 (2d Dist.); *In re M.R.*, 2011-Ohio-3733, at ¶ 18.

{¶18} Furthermore, although Emma was not present at the hearing, she was represented by counsel who made arguments in opposition to the Agency's motion on her behalf and who engaged in a lengthy and robust cross examination of the Agency's sole witness. Critically, Emma did not file a motion requesting transportation to the hearing or a request to attend the hearing by telephone or other virtual means. Notably, Emma's counsel had filed such a motion with respect to the adjudication hearing which the trial court granted, and Emma was able to attend that hearing through electronic means.[3] Additionally, Hadon, who was also incarcerated at the time of the permanent-custody hearing, filed a motion to transport or, in the alternative, to allow him to attend the permanent-custody hearing virtually, which the trial court granted. Accordingly, Emma and her counsel would have been aware that they could petition the court to transport Emma to the hearing or to allow her to attend the hearing virtually, yet elected not to do so.

{¶19} Furthermore, at the time of the permanent-custody hearing, Emma was not a party to the case plan, a position that she does not contest[4]. Thus, it appears that Emma's lack of presence at the permanent-custody hearing may have been a

---

[3] We also note that Emma's counsel filed a motion to appear by phone or Zoom for the annual review hearing.
[4] Emma did initially object to her being removed from the case plan because of her incarceration. However, after the Agency modified the case plan to include the provision that Emma could be added to the case plan if she contacts the Agency within 72 hours of her release, she withdrew her objection on the grounds that it was moot. Emma was not released from incarceration prior to the permanent-custody hearing and was, therefore, never added back to the case plan.

conscious decision on the part of Emma and her counsel. Even if the failure to request to be transported to the hearing or attend virtually was an oversight, we do not find that the trial court abused its discretion by proceeding with the permanent-custody hearing without Emma being present. *See In re A.W.*, 2017-Ohio-1486, at ¶ 20 (finding no due process violation where an incarcerated parent was not transported to a permanent-custody hearing after filing a motion to transport); *In re A.C.H.*, 2011-Ohio-5595, ¶ 47 (4th Dist.) ("a parent does not suffer a violation of the parent's due process right to be present and heard at a permanent custody hearing when the parent receives proper notice of the hearing and fails to request transport from prison"); *In re S.F.T.*, 2010-Ohio-3706, ¶ 7 (12th Dist.).

*Conclusion*

{¶20} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we overrule the assignment of error and affirm the judgment of the Hardin County Court of Common Pleas, Domestic Relations Division, Juvenile Section.

***Judgment Affirmed***

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

Case No. 6-25-05

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge

DATED:
/jlm

-10-