[Cite as *In re T.B.*, 2019-Ohio-1742.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF:<br><br>T.B. | JUDGES:<br>Hon. W. Scott Gwin, P.J<br>Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J.<br><br>Case No. 2019 AP 01 0005<br><br>O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division, Case No. 2017 JN 00383 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 7, 2019 |

APPEARANCES:

| For Appellee | For Appellants |
|---|---|
| JEFF M. KIGGANS<br>Tuscarawas County Job & Family Services<br>389 – 16th Street, SW<br>New Philadelphia, Ohio  44663 | JOHN GARTRELL<br>Assistant Public Defender<br>153 N. Broadway<br>New Philadelphia, Ohio  44663 |
| DONOVAN HILL<br>Guardian ad Litem<br>116 Cleveland Ave., NW – Suite 108<br>Canton, Ohio  44702 | |

*Hoffman, J.*

{¶1}   Appellant Criste Wise ("Mother") appeals the December 11, 2018 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her minor child ("the Child") and granted permanent custody of the Child to appellee Tuscarawas County Job and Family Services ("TCJFS").

STATEMENT OF THE FACTS AND CASE

{¶2}   Mother and Randy Brigham are the biological parents of the Child.  On December 7, 2017, the trial court placed the Child in the emergency temporary custody of TCJFS after Mother was arrested on outstanding warrants out of the state of Georgia. The trial court, in a separate judgment entry filed the same day, appointed Attorney Donovan Hill as guardian ad litem for the Child.  Also on December 7, 2017, TCJFS filed a complaint, alleging the Child was a dependent child.

{¶3}   The trial court ordered ICPC (Interstate Compact on the Placement of Children) home studies of the Child's paternal great aunt and maternal step-aunt, both of whom resided in Georgia.  Attorney Hill filed his initial guardian ad litem report on January 26, 2018.  Following an adjudicatory hearing on January 30, 2018, the trial court found the Child to be dependent and ordered the Child remain in the temporary custody of TCJFS.  The trial court further ordered any written communications between Mother and the Child be approved by the court prior to delivery to the Child.

{¶4}   Attorney Hill filed an interim report on April 23, 2018.  The trial court conducted a review hearing on April 23, 2018, and maintained the status quo.  In a judgment entry filed April 25, 2018, the trial court stated Mother, who had been extradited to Georgia, had failed to complete a drug court program, was jailed, but released with

instructions to enter drug treatment. The trial court noted there was no indication Mother had entered drug treatment or had, in any other way, addressed her drug problem. The trial court added, although Mother sent communications to the Child via TCJFS, Mother had failed to contact her caseworker. On May 22, 2018, counsel for Mother advised the trial court Mother was residing at Women's Treatment and Recovery Services in Gainesville, Georgia.

{¶5} On October 5, 2018, TCJFS filed a motion to modify disposition from temporary custody to permanent custody. TCJFS maintained the Child could not be placed with Mother within a reasonable time. The motion set forth the following facts. The Child had been in TCJFS custody since December 6, 2017, when Mother was arrested in Tuscarawas County on outstanding warrants from Georgia. Mother subsequently was extradited to Georgia. She was ordered to complete inpatient drug rehabilitation. Mother began treatment, but went AWOL (Absent Without Liberty) after smuggling alcohol or drugs into the facility. Mother was apprehended and sentenced to 11 months in jail on the original charges which led to her absconding to Ohio. Mother was also awaiting the disposition of additional drug charges.

{¶6} The trial court scheduled the permanent custody hearing for December 6, 2018. Mother filed a Motion to Continue/Motion to Transport on October 23, 2018, requesting the hearing be continued until after her release from jail on January 8, 2019, or, alternatively, she be transported to Ohio for the hearing. The trial court denied the motion. On November 15, 2018, Mother filed a motion asking to be present at the hearing by Skype or telephone. The trial court denied the motion.

{¶7} Attorney Hill filed his final report on December 5, 2018. The hearing

proceeded as scheduled on December 6, 2018.

{¶8} Prior to the commencement of the hearing, Counsel for Mother requested a continuance of the hearing in order for Mother to attend as well as a six month extension of custody to provide her with an opportunity to work on her case plan. The trial court overruled the requests. Counsel for Mother introduced three letters written by Mother, detailing various time frames of her life. The letters were admitted into evidence without objection.

{¶9} Malissa Cantarero, the ongoing caseworker, discussed the events which led to TCJFS taking the Child into custody. Cantarero stated TCJFS received a call from a probation officer in Georgia, advising Mother had picked up the Child, who was in safe placement, fled the state, and came to Ohio. A federal warrant had been issued for Mother's arrest. When Mother was arrested in Tuscarawas County, TCJFS took the Child into custody.

{¶10} Prior to her extradition to Georgia, Mother spent ten to fifteen days in the Tuscarawas County Jail. Cantarero visited Mother at the jail and explained the process to her. Mother provided Cantarero with the names of relatives for possible placement. Mother also advised Cantarero she was pregnant and would probably be sent to prison when she returned to Georgia. Mother told the caseworker she would keep in contact. Cantarero gave Mother all of her contact information. While the case was pending, Cantarero received only one letter from Mother which arrived after TCJFS moved for permanent custody.

{¶11} Cantarero detailed the unstable life to which Mother exposed the Child while they resided in Georgia. Mother was in and out of jail. When Mother was incarcerated,

the Child lived with various family members. During one incarceration, Mother arranged for the Child to stay with Brigham, the Child's father, his wife, and her daughter. However, the Child was removed from her father's home after he was arrested for molesting his wife's daughter. The Child was present in the home when the assault occurred. The Child was subsequently placed in a safe placement with her step-aunt. Mother went AWOL from a treatment program, picked up the Child from the step-aunt's home, and fled to Ohio. Prior to coming to Ohio, the Child and Mother lived at six different addresses with four different men.

{¶12} Upon her extradition to Georgia, Mother was placed in a treatment facility, but was constantly non-compliant with the regulations. Mother was moved to another facility, which recommended she do outpatient services. Her probation officer arranged for Mother to return to the first facility. After being caught sneaking drugs or alcohol into the facility, Mother went AWOL. She was arrested shortly thereafter and charged with possession of meth, possession of drug paraphernalia, and absconding. Mother chose to serve the remainder of her original drug sentence in jail rather than rehab. At the time of the permanent custody hearing, Cantarero had not been advised of the outcome of the additional three charges.

{¶13} Cantarero testified Mother had not remedied any of the concerns which led to the Child's removal. Mother had the opportunity to complete drug treatment, but failed to do so. Cantarero saw no indication Mother would be able to provide the Child with a stable environment once she was released from jail. Cantarero stated it was in the Child's best interest to be placed in the permanent custody of TCJFS. The Child is "doing awesome" in her foster placement. She is bonded with the foster family and the foster

parents wish to adopt her. The family has shown compassion to the Child and ensures she has contact with her relatives. Although the Child's first choice is to live with her step-aunt in Georgia, the home study was never completed. TCJFS learned the step-aunt and her husband moved into the home of Mother's mother, which raised concerns about Mother re-entering the Child's life upon her release from jail.

**{¶14}** Via Judgment Entry filed December 11, 2018, the trial court terminated all of Mother's parental rights, finding it was in the Child's best interest to place her in the permanent custody of TCJFS.

**{¶15}** It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED CRISTE WISE DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW WHEN IT DENIED MOTHER'S MOTION TO CONTINUE THE PERMANENT CUSTODY TRIAL UNTIL AFTER HER RELEASE FROM A GEORGIA JAIL AND BY DENYING MOTHER'S MOTION TO ATTEND THE PERMANENT CUSTODY TRIAL BY TELEPHONE OR VIDEO CONFERENCING.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF

PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST.

**{¶16}** This case come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶17}** In her first assignment of error, Mother contends the trial court abused its discretion in denying her motion to continue the change of custody hearing, and her request to attend the hearing by telephone or video conferencing.

**{¶18}** The decision to grant or deny a motion to continue is entrusted to the broad discretion of the trial court. *Hartt v. Munobe,* 67 Ohio St.3d 3, 9, 615 N.E.2d 617 (1993). Ordinarily, a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Wheat,* 5th Dist. Licking App. No. 2003–CA–00057, 2004–Ohio–2088. An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶19}** In evaluating whether the trial court has abused its discretion in denying a continuance, appellate courts apply a balancing test which takes into account a variety of competing considerations, including the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstance which gives rise to the request for a continuance. *State*

*v. Unger,* 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078 (1981).

**{¶20}** We find the trial court did not abuse its discretion in denying Mother's request for a continuance. Mother contributed to the circumstances which gave rise to her request. She was either incarcerated or in court-ordered inpatient drug treatment throughout the pendency of this case. In fact, Mother was incarcerated at the time of the permanent custody hearing because she chose to complete her sentence in jail rather than attend drug treatment. Although Mother was scheduled to be released in January, 2019, she was awaiting sentencing on pending charges which could possibly extend her period of incarceration. Further, Mother had the opportunity to address her drug abuse issues, but she chose not to do so. She only contacted her case worker one time while the case was pending. There is no indication Mother would work on her case plan when she was actually released from jail.

**{¶21}** Mother also argues the trial court abused its discretion in denying her request to attend the permanent custody hearing by telephone or video conferencing.

**{¶22}** Ohio courts have recognized parents have a constitutionally protected right to be present at permanent custody hearings, but they also recognize that such right is not absolute if the parent is incarcerated. *See, e.g., In re C.M.,* 9th Dist. Summit Nos. 23606, 23608, 23629, 2007–Ohio–3999, ¶ 14. The fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976), quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). Accordingly, Mother's due process right to be heard could have been satisfied by arranging for her presence at the permanent custody hearing or by an alternate method of meaningful participation. *See In re S.A.,* 2d Dist. Clark No. 07–CA–

110, 2008–Ohio–2225, ¶ 12; *In re Roque,* 11th Dist. Trumbull No. 2005–T–0138, 2006–Ohio–7007, ¶ 18. The decision whether or not to allow an incarcerated party to be present is within the sound discretion of the trial court. *Trammell v. Powell,* 2d Dist. No. 23832, 2011–Ohio–2978, ¶ 6.

**{¶23}** We find the trial court did not deprive Mother of her fundamental liberty interest in the care, custody, and management of her child by holding the permanent custody hearing in her absence. Counsel for Mother fully participated in the permanent custody hearing and represented Mother's interest. Additionally, the trial court allowed Mother to present her testimony via written testimony. Thus, Mother had an opportunity to present her version of events to the trial court.

**{¶24}** Based upon the foregoing, Mother's first assignment of error is overruled.

II

**{¶25}** In her second assignment of error, Mother challenges the trial court's finding the Child could not be placed with her within a reasonable time and finding it was in the Child's best interest to grant permanent custody to TCJFS.

**{¶26}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶27}** R.C. 2151.414 sets forth the guidelines a trial court must follow when

deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶28} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶29} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be

achieved without a grant of permanent custody.

{¶30} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶31} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶32} As set forth in our statement of the facts and case, supra, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of the Child from her home. Mother failed to address her drug problem, even while in a treatment facility. Mother did not stay out of jail long enough to participate in any case plan services. Mother did not maintain contact with the case worker.

{¶33} With respect to the best interest finding, the evidence revealed the Child was doing exceptionally well in her foster placement. She was doing well in school and making friends. She is bonded with her foster parents and they wish to adopt her.

{¶34} Based upon the foregoing, we find the trial court did not err in finding the

Child could not and should not be placed with Mother within a reasonable time. We further find the trial court's finding it was in the Child's best interest to grant permanent custody to TCJFS was supported by clear and convincing evidence.

{¶35} Mother's second assignment of error is overruled.

{¶36} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concur