[Cite as *In re B.D.*, 2022-Ohio-2555.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: B.D. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J.<br><br>Case No. 2021 CA 00091<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2019-0072 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 25, 2022 |

APPEARANCES:

| For Appellee | For Appellant J.S. |
|---|---|
| WILLIAM C. HAYES<br>Licking County Prosecutor | ANDREW E. RUSS, ESQ.<br>P.O. Box 520<br>Pickerington, Ohio 43147 |
| BRANDON PIGG<br>Assistant Prosecuting Attorney<br>20 S. Second Street, Fourth Floor<br>Newark, Ohio 43055 | For Chester Dye |
| Guardian Ad Litem | JERMAIN COLQUITT<br>35 E. Gay Street<br>Suite #212-A<br>Columbus, Ohio 43215 |
| J. MICHAEL NICKS<br>96 W. William Street<br>Suite #100<br>Delaware, Ohio 43015 | |

*Hoffman, P.J.*

{¶1}   Appellant Jennifer Small ("Mother") appeals the February 25, 2022 Opinion/Judgment entered by the Licking County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's October 13, 2021 decision, recommending her parental rights with respect to her minor child ("the Child") be terminated; approved and adopted said decision as order of the court; and granted permanent custody of the Child to appellee Licking County Job and Family Services ("LCJFS").

STATEMENT OF THE CASE AND FACTS

{¶2}   Mother and Chester Dye[1] are the biological parents of the Child.  LCJFS became involved with the family in late January, 2019, due to concerns about Mother's substance abuse and her allowing other individuals to use drugs in her home.  LCJFS attempted to help Mother resolve these issues by recommending means for her to detox, maintain sobriety, and remove individuals using drugs from her home.  On January 25, 2019, Mother admitted she had used methamphetamine and marijuana as recently as January 17, 2019.  After Mother was arrested for felony theft of a credit card on February 6, 2019, LCJFS sought an ex parte order of removal of the Child.  The following day, February 7, 2019, LCJFS filed a Complaint, alleging the Child was dependent.  The same day, the trial court placed the Child in the emergency shelter care custody of LCJFS. The trial court appointed Attorney Michael Nicks as Guardian ad Litem ("GAL") for the Child.

{¶3}   Following an adjudicatory and dispositional hearing on March 25, 2019, the trial court found the Child to be dependent and placed him in the temporary custody of

---

[1] Dye is not a party to this Appeal.

Mother with an order of protective supervision to LCJFS. LCJFS filed a case plan on March 8, 2019, which the trial court adopted at the hearing and incorporated into its decision filed March 25, 2019.

{¶4} LCJFS filed a Motion for Modification of Disposition and Motion for Temporary Custody on July 26, 2019. Therein, LCJFS explained Mother tested positive for methamphetamine on June 27, and July 22, 2019, and, despite the case worker's attempts, Mother had not yet engaged in substance abuse treatment. On July 25, 2019, after LCJFS received Mother's positive test results, the trial court granted an ex parte order of removal and, on July 26, 2019, placed the Child in the emergency shelter care custody of LCJFS. Following a hearing on LCJFS's motion for modification on October 10, 2019, the magistrate placed the Child in the temporary custody of LCJFS. October 21, 2019 Magistrate's Decision at 2, unpaginated.

{¶5} On January 2, 2020, LCJFS filed a Motion to Modify Disposition, seeking an extension of temporary custody. Via Judgment Entry filed January 27, 2020, the trial court extended the order of temporary custody until August 6, 2020, the day on which the extension period terminated by operation of law. LCJFS filed a Motion to Modify Disposition on July 6, 2020, seeking a six-month extension of the order of temporary custody. Via Judgment Entry filed July 31, 2020, the trial court extended the order of temporary custody until February 6, 2021.

{¶6} On January 6, 2021, LCJFS filed a motion for permanent custody. The trial court scheduled a hearing on the motion for April 16, 2021.

{¶7} On April 15, 2021, Mother filed a motion to continue the permanent custody hearing. Mother appeared at the courthouse the following day. She advised her attorney

she did not wish to continue the hearing and stated she agreed with LCJFS's motion for permanent custody. When court personnel looked for Mother, they found she had left the courthouse.

{¶8} The matter proceeded to hearing. Matthew Tracy, an ongoing social worker with LCJFS, testified he was assigned to the matter in May, 2019. Tracy explained LCJFS became involved with the family in late January, 2019, due to allegations of drug use, Mother allowing individuals to use drugs in her home, and an investigation into whether Mother was manufacturing narcotics in the home. The intake worker initially worked with Mother on a non-court basis, however, on February 6, 2019, LCJFS was notified Mother was going to be arrested and sought an ex-parte order of removal of the Child.

{¶9} Tracy explained, when he was assigned the case, he attempted to meet with Mother. Mother did not respond to his calls and would not meet with him. Tracy found Mother after he did a surprise visit at the end of June, 2019. Tracy tried to get Mother into drug treatment, provided her with contact information, and even made an appointment for her with The Village Network. Mother did not present for the appointment. Tracy made another appointment, however, five minutes before the appointment was to begin, Mother called and cancelled. At a semi-annual review hearing on July 22, 2019, Mother tested positive for methamphetamines.

{¶10} Tracy noted Mother understood the case plan requirements. Mother did not feel she had a drug issue and disagreed with that aspect of the case plan. The case plan required Mother, who was on probation for theft, to follow the directions of her probation officer and complete probation; maintain stable employment; maintain clean and stable

housing; undergo a drug assessment; provide drug screens; and engage in substance abuse and mental health treatment.

**{¶11}** Between March, 2020, and July, 2020, Mother participated in substance abuse treatment at STAR and Courage House. Following completion of the programs, Mother continued to abuse methamphetamines. Mother tested positive for methamphetamines every month from July, 2020, through the date of the hearing. The only month during which Mother did not have a positive drug screen was February, 2021, because Tracy was unable to locate her to administer the screen. Despite the positive results, Mother denied using drugs. In addition, Mother continued to allow individuals to use drugs in her home.

**{¶12}** Tracy also testified regarding the best interest of the Child. Tracy indicated the Child does not have any special needs. Although he had some speech problems at the beginning of the case, the problems were addressed and resolved. The Child is doing well in his placement and the foster parents have expressed an interest in adopting him. He is a fun, active child. The GAL stated the foster family has maintained and will continue to maintain a relationship between Mother and the Child. The GAL noted Mother lacks a bond with the Child. The GAL opined granting permanent custody of the Child to LCJFS would be in the Child's best interest.

**{¶13}** Via decision filed on October 13, 2021, the magistrate granted LCJFS's motion for permanent custody and terminated Mother's parental rights. The magistrate found the Child could not be placed with Mother within a reasonable time and should not be placed with Mother as Mother continuously and repeatedly failed to remedy the concerns which led to the Child's removal, demonstrated a lack of commitment towards

the Child, and had abandoned the Child. The magistrate concluded it was in the best interest of the Child to grant permanent custody to LCJFS. The trial court approved and adopted the magistrate's decision via Judgment Entry filed October 13, 2021. Mother filed general objections to the magistrate's decision on October 26, 2021.

**{¶14}** On November 12, 2021, Mother filed a Notice of Appeal from the October 13, 2021 Magistrate's Decision with this Court. The trial court granted Mother an extension until January 19, 2022, to file her supplemental objections. Mother filed supplemental objections on January 20, 2022.

**{¶15}** This Court remanded the matter, ordering the trial court to rule on Mother's pending objections and any other related matters on or before February 28, 2022. Jan. 26, 2022 Judgment Entry. Via Opinion/Judgment Entry filed February 25, 2022, the trial court overruled Mother's objections, and approved and adopted the magistrate's October 13, 2021 decision as order of the court.

**{¶16}** It is from this judgment entry Mother appeals, raising the following assignments of error:


I. THE TRIAL COURT'S FAILURE TO GRANT A CONTINUANCE OF THE PERMANENT CUSTODY HEARING TO ALLOW APPELLANT TO SUBPOENA HER WITNESSES, BE PRESENT IN PERSON AT THE HEARING, HAVE AN OPPORTUNITY TO PREPARE, AND PRESENT HER CASE RESULTED IN APPELLANT BEING DENIED HER RIGHT TO DUE PROCESS WHEN HER WISHES WERE UNCLEAR.

II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MOTHER'S MOTION TO CONTINUE THE PERMANENT CUSTODY HEARING WHEN HER WISHES WERE UNCLEAR.

III. THE TRIAL COURT FAILED TO DETERMINE BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT INTELLIGENTLY [SIC], VOLUNTARILY, AND KNOWNINGLY [SIC] WAIVED HER RIGHT OF DUE PROCESS IN PARTICIPATING IN THE PERMANENT CUSTODY HEARING WHEN HER WISHES WERE UNCLEAR.

{¶17} This case came to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

{¶18} We elect to address Mother's first and second assignments of error together. In her first assignment of error, Mother contends she was denied her constitutional right to due process because the trial court's failure to grant a continuance of the permanent custody hearing prevented her from subpoenaing witnesses, being present in person at the hearing, and having an opportunity to prepare and present her case. In her second assignment of error, Mother asserts the trial court abused its discretion in denying her motion to continue because her intentions were unclear.

{¶19} An appellate court will not reverse a denial of a continuance in a permanent custody case unless the juvenile court abused its discretion. *In re A.U.*, 10th Dist. Franklin No. 20AP-594, 2021-Ohio-2658, ¶ 11. In reviewing a juvenile court's decision to deny a continuance, an appellate court conducts a balancing test, weighing any potential

prejudice to the movant against the juvenile court's ability to control its own docket and promptly and efficiently affect justice. *In re D.E.*, 10th Dist. Franklin Nos. 20AP-83 and 20AP-85, 2021-Ohio-524, ¶ 42.

**{¶20}** Prior to the presentation of the evidence relative to Mother and after a lengthy discussion, infra, Attorney Scott Sidner, counsel for Mother, withdrew the motion to continue. Transcript of April 16, 2021 Hearing at 23.

**{¶21}** As there was no pending motion before the trial court, we find the trial court did not abuse its discretion in failing to grant a continuance. See, *State v. McDaniel,* 9th Dist. Summit No. 25492, 2011–Ohio–5001, ¶12. We further find, because Mother withdrew her motion, the trial court's failure to grant a continuance did not violate her constitutional right to due process.

**{¶22}** We note the trial court stated its "intention was to go forward with half of the case today and then continue so Mom could bring those witnesses in so granted in part and denied in part." Tr. at 10. The trial court added:

> However, since then, we've – Mr. Sidner has had some conversation with his client and she has changed that position. She was here initially at 8:30 when we got started. It is now almost 10 to 10 and she is no longer out in the hall, left the courthouse, but did indicate to her attorney what she wanted to do today. *Id.*

**{¶23}** It was Mother's own decision to allow her counsel to withdraw the motion to continue which prevented her from subpoenaing witnesses, being present in person at

the hearing, and having an opportunity to prepare and present her case. Mother cannot now blame the trial court for her decision.

{¶24} Mother's first and second assignments of error are overruled.

III

{¶25} In her third assignment of error, Mother maintains the trial court failed to determine by clear and convincing evidence Mother intelligently, voluntarily, and knowingly waived her due process right to participate in the permanent custody hearing.

{¶26} The United State Supreme Court has determined parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky* v. *Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution. *In re Shaeffer Children*, 85 Ohio App.3d 683, 689–690, 621 N.E.2d 426 (1993).

{¶27} Ohio courts have recognized parents have a constitutionally protected right to be present at permanent custody hearings, but such right is not absolute, for example, as when the parent is incarcerated. See, e.g., *In re C.M.,* 9th Dist. Summit Nos. 23606, 23608, 23629, 2007–Ohio–3999, ¶ 14. The fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner." *In re T.B.*, 5th Dist. Tusc. No. 2019 AP 01 0005, 2019-Ohio-1742, ¶22, citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976), quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). Accordingly, a parent's due process right to be heard could be satisfied by arranging for the parent's presence at the permanent custody hearing or by an alternate method of meaningful participation. *Id.* (Citation omitted).

**{¶28}** The April 16, 2021 permanent custody hearing involved not only the Child, but also Mother's older child ("Child 2"). John Small, father of Child 2, filed a motion for legal custody prior to the hearing. LCJFS advised the trial court it agreed with Small's motion and withdrew its motion for permanent custody relative to Child 2. LCJFS indicated the Agency and Small had come to an agreement in regards to the terms of Small's motion, which included, inter alia, a request for an order of protective supervision ("PSO").

**{¶29}** The trial court inquired whether Mother agreed, to which Attorney Sidner responded:

> Yes, she has. I'm surprised she's not in the courtroom right now. I have talked to her – (INAUDIBLE) – she was here before even 8:30 but that's – and I talked to her about the legal custody and the PSO draft a few days ago, and * * * she's in agreement. And, Your Honor, she's left and not here in the courtroom, but we're prepared to go forward with everything. And on this particular case itself she – (INAUDIBLE) – signed it but she's in full agreement with legal custody. Thank you.

> Tr. at 7.

**{¶30}** Thereafter, the trial court questioned Chester Dye, Father of the Child, who voluntarily consented to the award of permanent custody to LCJFS. Upon conclusion of the questioning, the trial court permitted Dye to leave the hearing. The trial court then inquired:

And [Mother] is no longer in the hall.  She didn't just go smoke or anything, did she?

* * *

She exited the courtroom? Okay.

* * *

Double check to make sure [Mother] didn't just go smoke and she's back out there.

UNIDENTIFIED: She is not.

THE COURT: Okay.  All right.  So we'll come back to Mr. Sidner.  I know [Mother] was here.

She was personally served with the motion for permanent custody on [the Child] on March 3rd of 2021 by the Licking County Sheriff.

She was actually here at 8:30 this morning even with the motion to continue, not knowing if that was going to be granted or not, knowing that we were going to potentially bring her back on a second day with her – to give her the opportunity to subpoena the witnesses she wanted to.

Mr. Sidner, I know you had some discussion with her during the hour and a half, two hours that she was here.  What was your client's position when you talked to her in regards to [the Child]?

MR. SIDNER: Thank you, Your Honor – (INAUDIBLE) – with her several times, even leading up to today's trial, and I did file the continuance motion.  I just got the five witnesses – (INAUDIBLE) – and a motion for continuance based on further trial preparation, to get the witnesses together

and go over their testimony with my client and everything, and that – that was the plan – (INAUDIBLE) – I filed here.

And she – my client was here before 8:25. She said she would get here early. I talked with her and after you spoke off the record in the courtroom here about some issues regarding the caseworker, and then with that information I talked to my client about this case * * *

And then she made the decision – (INAUDIBLE) – I'm pretty sure she would come in, be sworn in, the Court will ask her questions, and I can go over that, too, if you want me to, what she said. But she was really upset but she was still – (INAUDIBLE) – she was – even though she was upset, she was still of a – (INAUDIBLE) – mind to make a decision, that she's going to go back – (INAUDIBLE) – on [the Child's]     – (INAUDIBLE) – case.

I asked her numerous times while she was here this morning, and that's what she wanted to do. Even though she was upset, she still wanted to go do that, and I believe that's what she wanted to do. So even though she's not here, so I'm prepared to go forward even if she's not here – (INAUDIBLE) – but – (INAUDIBLE)       –

THE COURT: And she was in agreement when she left with the – with the State's motion for permanent custody –

MR. SIDNER: That's correct.

* * *

THE COURT: And did you go over the rights, specifically the right to contest – consent to an adoption and be notified of that adoption hearing with her?

MR. SIDNER: Yes. Yes, Your Honor. I understand – that's what she said. She's in agreement with that – (INAUDIBLE) – she understood that. * * * I also went over she understands – (INAUDIBLE) – rights, including visitation, access to the child.

I also told her she does not get any notice of any medical, school records, any schools, things like that. She gives up the right to that.

She gives up the right for any notice on adoption or have a say in the adoption.

She gives up all religious say, too. * * * she also gives up the right to have to legally support him, the child, through child support and other means.

And she was all in agreement. She understood each one of those issues.          * * *

But she just thinks it's the best place for her child – (INAUDIBLE) – very hard decision. That's why she was upset and she didn't want to come in so she – (INAUDIBLE) – with that – (INAUDIBLE) – her not being her doesn't indicate she has disinterest in her child or anything like that but just that she's really upset with this.

So – so because of that, I am going to withdraw the motion for continuance – (INAUDIBLE) – and go forward today uncontested * * *

*Id.* at 19-23.

**{¶31}** Upon review of the record, we find the trial court did not deprive Mother of her fundamental liberty interest in the care, custody, and management of the Child by conducting the permanent custody hearing in her absence. See, *Santosky*, supra. Attorney Sidner fully participated in the permanent custody hearing and represented Mother's interest.  See, *In re T.B.,* supra.  Further, the evidence, as detailed supra, establishes Mother made the conscious decision not to attend the hearing and authorized Attorney Sidner to proceed in her absence.

**{¶32}** Mother's third assignment of error is overruled.

**{¶33}** The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.
Wise, John, J.  and
Baldwin, J. concur