[Cite as *In re G.D.*, 2023-Ohio-1913.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

IN THE MATTER OF: G.D.

:
:
:
:        C.A. No. 2022-CA-18
:
:        Trial Court Case No. 2020 JC 16
:
:        (Appeal from Common Pleas Court-
:        Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on June 9, 2023

. . . . . . . . . . .

MICHAEL W. DONIZETTI, Attorney for Appellants-Great-Grandparents

GREGORY K. LIND, Attorney for Third Party Appellees-Foster Parents

MARY ADELINE R. LEWIS, Attorney for Appellee-Father

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Appellants ("Great-Grandparents") appeal from a judgment of the Champaign County Court of Common Pleas, Juvenile Division, which granted legal custody of their great-granddaughter, G.D., to her foster parents ("Foster Parents"). For

the reasons outlined below, we affirm the juvenile court's judgment.

## I.    Facts and Procedural History

{¶ 2} G.D. was born in September 2020.   At the time of her birth, she tested positive for methamphetamines and amphetamines.   G.D. was placed in a foster home with Foster Parents when she was six weeks old.   She was adjudicated abused, neglected and dependent on December 2, 2020.   Temporary custody was awarded to the Champaign County Department of Jobs and Family Services ("CCDJFS").

{¶ 3} On August 24, 2021, CCDJFS filed a motion to grant legal custody to Great-Grandparents, the child's paternal great-grandparents.   The following month, Foster Parents filed a motion to intervene and a motion seeking legal custody of G.D.

{¶ 4} A hearing on the custody motions commenced in May 2022.   Thereafter, the juvenile court granted legal custody to Foster Parents.   The court also granted Great-Grandparents visitation in accordance with the Champaign County Standard Order of Visitation.

{¶ 5} Great-Grandparents appeal.[1]

## II.    Best Interest Determination

{¶ 6} The first assignment of error asserted by Great-Grandparents states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN

GRANTING LEGAL CUSTODY OF G.D. TO [FOSTER PARENTS], OVER

---

[1] We note that G.D.'s biological father also filed a brief, but he did not participate in the custody hearing and he did not file an appeal. Thus, we have not considered his brief.

[GREAT-GRANDPARENTS], AS THE TRIAL COURT'S JUDGMENT IS NOT SUPPORTED BY COMPETENT CREDIBLE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Great-Grandparents assert that the juvenile court's judgment was not supported by the evidence and, as such, it reflects an abuse of the trial court's discretion. They further argue that the court's judgment was contrary to Ohio law, which favors placing children with relatives.

{¶ 8} R.C. 2151.353(A)(3) provides that if a child is adjudicated abused, neglected or dependent, the court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]"   An award of legal custody "vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care * * *."   R.C. 2151.011(B)(21). An award of legal custody is not equivalent to, or as drastic as, a permanent custody award, because legal custody "does not divest a parent of residual parental rights, privileges, and responsibilities."   *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 17.

{¶ 9} When a juvenile court makes a custody determination under R.C. 2151.353, it must do so in accordance with the "best interest of the child" standard set forth in R.C. 3109.04(F)(1).   *In re T.L.W.*, 2d Dist. Montgomery No. 28363, 2019-Ohio-3118, ¶ 28. The best interest factors relevant hereto include (1) the child's interaction with parents,

siblings, and others, (2) the child's adjustment to home, school, and community, (3) the mental and physical health of all persons involved, and (4) the persons more likely to honor visitation.

**{¶ 10}** An award of legal custody must be supported by the preponderance of the evidence. *In re L.H.*, 2021-Ohio-3521, 179 N.E.3d 214, ¶ 21 (2d Dist.). We apply the abuse of discretion standard of review to a trial court's judgment on a motion for legal custody and thus will not reverse the court absent an abuse of that discretion. *Id.,* citing *In re J.T.*, 2d Dist. Montgomery No. 27343, 2017-Ohio-1303, ¶ 10-11.

**{¶ 11}** We begin with Great-Grandparents' argument that Ohio law favors placement with relatives over non-relatives. This court has held that the consideration of whether a child can be placed with a relative is not a statutory requirement. *In re F.C.*, 2d Dist. Montgomery No. 23803, 2010-Ohio-3113, ¶ 24. Instead, "that possibility is a matter that ought to be considered in connection with the child's interaction and relationship with the child's parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child." *Id.*, citing R.C. 2151.414(D)(1)(a). Accordingly, a trial court has no obligation to consider placing a child with a relative. *In re E.S.*, 2d Dist. Clark No. 2016-CA-36, 2017-Ohio-219, ¶ 59. Unlike biological parents, other relatives or friends seeking placement are not afforded special status or presumptive rights. *Id.*

**{¶ 12}** We next address the best interest of the child. In this case, the juvenile court's judgment regarding the best interest of the child merely states that "it is in the best interest of [G.D.] to be in the Legal Custody of [Foster Parents] and for [Great-

Grandparents] to have regular and consistent visitation." None of the statutory factors are specifically discussed in the entry.

{¶ 13} In our opinion, this case was a relatively close call. The record supported a finding that G.D., who was only two years old at the time of the hearing, had bonded with both the foster family and her biological family, and she appeared to be well-adjusted to both households. Further, it is clear from the judgment that the juvenile court recognized that G.D. was bonded with both her foster family and her biological family. The evidence indicated, and the court noted, that it would be detrimental to terminate the child's relationship with either party. To that end, the court further noted the importance of permitting G.D. to spend time with Great-Grandparents and, given this, granted Great-Grandparents significant visitation time.

{¶ 14} However, the court also noted that Foster Parents were "young, healthy" and that Great-Grandparents were "older, and not in the best of health, particularly [Great-Grandmother], who by her own admission [took] a long list of medications for sleep issues and physical ailments, specifically seizures." The court also concluded Foster Parents were more likely to honor any visitation requirements. From our review of the court's decision and the testimony, these issues were the deciding factors in the juvenile court's best interest determination.

{¶ 15} According to the testimony presented at the hearing, Foster Parents were in their early 30s and in good physical health. Conversely, Great-Grandmother was 58 at the time of the hearing, and Great-Grandfather was 59. If they had been awarded custody, Great-Grandmother would have been the child's primary caretaker, because

Great-Grandfather maintained a full-time job. Great-Grandmother testified that she had suffered injuries a few years prior to the hearing when an obese man fell on top of her; specifically, she testified she had been rendered unconscious when the man fell on her, and her spine had been fractured. Subsequently, she began to have what she described as "seizures," which caused her to feel as if she would "pass out." She denied suffering convulsions.

{¶ 16} Great-Grandmother testified she had been prescribed numerous medications as a result of her injuries. Specifically, she took Norco, an opioid, for her back pain, and Duloxetine and Cymbalta for nerve pain. She testified that she had been prescribed Trazodone to help her sleep, and she was subsequently also prescribed Seroquel as a further sleep aid after she suffered hallucinations from sleep deprivation. Great-Grandmother testified that she took Lamotrigine for seizures and that she took Lorazepam for a "different type of seizure."[2] Finally, she testified that she took Lisinopril for "hormonal issues" which "sometimes" cause her to have elevated blood pressure.

{¶ 17} It was clear from this evidence alone that Great-Grandmother suffered from conditions which might render her incapable of properly caring for a young child. Specifically, she testified that she suffered from seizures that caused dizziness and made her feel as though she would lose consciousness. Despite this, she continued to drive a vehicle. We cannot imagine how this would not present a safety issue when transporting the child. Further, Great-Grandmother took medications which might otherwise impair her judgment and ability to care for the child.

---

[2] No evidence was presented to explain the nature of this "different type" of seizure.

{¶ 18} As stated previously, we are aware that this was a difficult case. However, based upon the record before us, we cannot conclude that the court abused its discretion in determining that it was in G.D.'s best interest to award legal custody to Foster Parents.

{¶ 19} Accordingly, the first assignment of error is overruled.

### III.  Foster Mother's Medical Testimony

{¶ 20} The second assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING [FOSTER MOTHER], A NON-EXPERT, TO PROVIDE MEDICAL OPINION TESTIMONY REGARDING [GREAT-GRANDMOTHER'S] MEDICATION INTAKE, OVER THE OBJECTIONS OF COUNSEL FOR [GREAT-GRANDPARENTS], AND OVER THE OBJECTIONS OF THE CHAMPAIGN COUNTY DEPARMENT OF JOBS AND FAMILY SERVICES.

{¶ 21} Great-Grandparents contend that the juvenile court erred when it permitted Foster Mother to testify regarding the medications taken by Great-Grandmother.

{¶ 22} During the hearing, Foster Mother testified that she was a registered nurse. When asked whether she had concerns about the medications Great-Grandmother took, Foster Mother testified that she worried about the seizure medications. Specifically, she noted that Great-Grandmother took a second seizure medication, which indicated that her seizures were not controlled by her first medication. Foster Mother noted that Great-Grandmother drove a vehicle, and she was concerned that Great-Grandmother would

have a seizure while driving with G.D. in the vehicle. Foster mother also testified that Seroquel would cause Great-Grandmother to be unresponsive at night and that G.D. gets up during the night, so she worried that Great-Grandmother would not be responsive.

{¶ 23} "[U]nless the record indicates otherwise, the judge [in a bench trial] is presumed to have considered only admissible evidence." *State v. Drane*, 2d Dist. Montgomery No. 29317, 2022-Ohio-4624, ¶ 18, citing *State v. Hawkins*, 2d Dist. Montgomery No. 29013, 2021-Ohio-3373, ¶ 57, quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 115, ¶ 27 (8th Dist.). "This presumption 'may be overcome only by an affirmative showing to the contrary by the appellant.' " *State v. Pearson*, 10th Dist. Franklin Nos. 14AP-793 and 14AP-816, 2015-Ohio-3974, ¶ 13, quoting *State v. Wiles*, 59 Ohio St.3d 71, 571 N.E.2d 97 (1991). There is no indication in this record that the court relied on Foster Mother's testimony about Great-Grandmother's medications in reaching its decision.

{¶ 24} Further, even if this testimony were improper, we cannot conclude that it was prejudicial, because Great-Grandmother testified regarding all her medications and their uses. She also candidly admitted that she took medications for seizures and she took two medications to help her sleep. Therefore, the court was aware of her medical problems and the nature of the medications prescribed even without Foster Mother's testimony.

{¶ 25} The second assignment of error is overruled.

### IV. Trial Court's Consideration of 42 U.S.C. 671

{¶ 26} Great-Grandparents' third assignment of error is:

THE TRIAL COURT IMPROPERLY APPLIED THE GUARDIAN AD LITEM'S TESTIMONY TO THE CCDJFS AS IT RELATES TO THE GUARDIAN AD LITEM'S TESTIMONY OF 42 U.S.C. SECTION 671(a)(19).

{¶ 27} In this assignment of error, Great-Grandparents object to a finding of the trial court regarding 42 U.S.C. 671(a)(19). Specifically, in its judgment entry, the juvenile court stated, "[a] home study was completed on [Great-Grandparents] shortly after the child's birth, but they were not initially considered[.] The Court believes they were a last resort for kinship placement because CCDJFS can lose funding if they do not place a child with relatives[.]" Great-Grandparents claim "the only testimony that referred to 42 U.S.C. Section 671(a)(19)" occurred when the guardian ad litem (GAL) answered affirmatively when he was asked whether he was familiar with that statutory provision. Great-Grandparents argue that "nowhere in the CCDJFS' testimony did they mention anything about this Code or funding. Thus, it was absolutely improper and a miscarriage of justice for the Court to attribute that testimony with the motives and reasoning behind CCDJFS' recommendations in this case."

{¶ 28} As relevant hereto, 42 U.S.C. 671 provides:

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which –

* * *

(19) provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a

child, provided that the relative caregiver meets all relevant State child protection standards[.]

**{¶ 29}** We first note that it was the attorney for Great-Grandparents who raised the issue of this statute by asking the GAL whether he was familiar with its provisions, thus opening the door for its consideration by the trial court.

**{¶ 30}** We also note that the statutory provision does not mandate the withholding of federal monies from the State merely because a child-placing agency does not place a child with a relative. Instead, it provides that relatives must be given preference over non-relatives *when* they meet all the relevant State standards for placement; if a relative does not meet the best interest standards, there is no preference for that relative.

**{¶ 31}** Moreover, this statute is irrelevant to the issue of the best interest of the child. While the trial court's interpretation of the statute and CCDJFS's motivation may be incorrect, we cannot conclude that this issue affected the outcome of the case because, as stated above, the trial court did not abuse its discretion in determining the best interest of the child.

**{¶ 32}** The third assignment of error is overruled.

## V.    Guardian Ad Litem's Testimony

**{¶ 33}** The fourth assignment of error states:

THE TRIAL COURT ERRED IN MISINTERPRETING THE GUARDIAN AD LITEM'S TESTIMONY AND RECOMMENDATION OF LEGAL CUSTODY.

{¶ 34} Great-Grandparents assert the juvenile court erred when it stated "the Guardian Ad Litem's written recommendation is that [Great-Grandparents] be given custody, but in his testimony he stated that if the child could maintain a family relationship with [Great-Grandparents] it would be ideal for [Foster Parents] to have custody." They claim the GAL maintained, both in his written reports and his trial testimony, that Great-Grandparents should be awarded custody.

{¶ 35} The GAL noted that this was "a hard case" because there were "two qualified families" competing for custody. However, he ultimately recommended that the court award legal custody to Great-Grandparents. He testified that his recommendation was "based mostly" upon "kinship and extended family." As noted by the court, he testified as follows:

You have an extended family to which the child will grow up regardless of the circumstances to identify with. And a very loving and high-functioning family to which [sic] who is younger and healthier. If we can somehow come up with a process where we can maintain the extended family relationships, there is an advantage to [the foster family]. It is because of the youth and their health.

{¶ 36} From our reading of this record, the GAL based his best-interest conclusions solely upon the fact that Foster Parents were not related to the child. Further, the GAL appears to admit that his position would be subject to change in favor of Foster Parents if the child were permitted to maintain her relationship with Great-Grandparents. We note the GAL also appeared to have concerns regarding Great-

Grandmother's health in relation to her ability to care for G.D.   Thus, we cannot say the juvenile court erred in its interpretation of the GAL's testimony.

{¶ 37} The fourth assignment of error is overruled.

## VI.    Conclusion

{¶ 38} All of Great-Grandparents' assignments of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.