[Cite as *In re J.H.*, 2026-Ohio-4.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: J.H., L.H., C.H., L.H., L.H.

:
:  C.A. Nos. 30528, 30529, 30530, 30531,
:  30532
:
:  Trial Court Case Nos. C-2015-001837-
:  1X; C-2015-001838-2A; C-2020-
:  002205-IV; C-2022-005225-1L; C-2022-
:  005226-1L
:
:  (Appeal from Common Pleas Court-
:  Juvenile Division)

**FINAL JUDGMENT ENTRY &
OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 2, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and LEWIS, J., concur.

MONTGOMERY C.A. Nos. 30528, 30529, 30530, 30531, 30532

DAWN S. GARRETT, Attorney for Appellant
SARAH H. CHANEY, Attorney for Appellee

EPLEY, P.J.

{¶ 1} Mother appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, that terminated her parental rights and granted permanent custody of five of her children—J.H., L.H.1, C.H., L.H.2, and L.H.3—to the Montgomery County Department of Job and Family Services—Children Services Division ("MCCS"). Mother challenges the denial of her oral motion to continue and reschedule the permanent custody hearing. For the following reasons, the trial court's judgment is affirmed.

## I. Relevant Procedural History

{¶ 2} Mother and Father are the parents of J.H., L.H.1, C.H., and twins L.H.2 and L.H.3. Mother and Father have other children, separately and together, who are not involved in this appeal. Throughout MCCS's involvement with the family, the agency had concerns about the parents' mental health, substance abuse, domestic violence, living conditions, criminal activity, and incarceration.

{¶ 3} MCCS first became involved with the family after Mother gave birth to L.H.1 in prison in February 2015. The couple's older child J.H., born in December 2013, had been left with Father, but Father was unable to care for him. MCCS filed dependency complaints on behalf of the two children, and they were adjudicated dependent. After a period of interim temporary custody of L.H.1 and interim protective supervision of J.H., the family was reunited, and MCCS was granted protective supervision over the children. Protective

2

supervision expired on December 25, 2015. Mother, who had been released from prison, gave birth to a third child, C.H., in April 2016.

**{¶ 4}** In January 2020, MCCS again became involved with the family due to reports of domestic violence and concerns over Mother's mental health. Six months later, MCCS filed a dependency complaint regarding C.H. and moved for temporary custody of all three children (then four, five, and six years old). On July 5, 2020, an incident occurred at Father's home, resulting in MCCS's taking emergency custody of the children. MCCS received interim temporary custody, and later it received temporary custody. In March 2022, MCCS placed the three children with their paternal grandmother, who resided in Georgia.

**{¶ 5}** In May 2022, Mother prematurely gave birth to twins (L.H.2 and L.H.3), and the two were hospitalized in the neonatal intensive care unit for a time. In mid-June 2022, MCCS obtained temporary custody of the twins, and they were also placed with Paternal Grandmother. However, due to an open case involving the children's older half-sister, who also resided in Paternal Grandmother's home, the five children were returned to Ohio in October 2022. The children have since been together in the same foster home.

**{¶ 6}** On October 17, 2022, MCCS moved for permanent custody of the three eldest children. On April 20, 2023, Paternal Grandmother sought to intervene in the action, and she moved for legal custody of the children. Four days later, MCCS moved for permanent custody of the twins.

**{¶ 7}** On November 29, 2023, the magistrate scheduled a dispositional hearing on the pending custody motions for February 16, 2024. Around the same time, both Mother and Father were sentenced to prison on drug-related charges. Father received a two-year sentence, and Mother received a three-year sentence.

{¶ 8} On February 9, 2024, a week before the scheduled hearing, Mother moved for permission to participate in the dispositional hearing by video, as she was incarcerated at the Ohio Reformatory for Women in Marysville. She stated that she "cares for her children and wants to be a part of all hearings or trials dealing with the fate of her children." On February 13, 2024, Father filed a motion to be conveyed from Madison Correctional Institution, where he was imprisoned, or alternatively, to participate in the February 16 hearing by Zoom.

{¶ 9} On February 15, 2024, the day before the hearing, a cousin of Father from Arkansas filed a motion for custody of Mother and Father's six children (the five at issue here and a younger sibling); the cousin did not move to intervene in the action. Mother sought an extension of temporary custody to MCCS.

{¶ 10} Neither Mother nor Father was present at the February 16, 2024 hearing due to their incarceration, but their counsel appeared on their behalf. Paternal Grandmother, Cousin, and another relative each traveled to Dayton from out-of-state for the hearing.

{¶ 11} Before the parties presented testimony, the magistrate provided an opportunity for Mother's and Father's counsel to secure the parents' attendance by Zoom. When it appeared that there were technical difficulties, the magistrate paused the proceedings so counsel could contact the institutions. After that brief recess, counsel reported that the Zoom link did not have the necessary permissions to connect with the jail system, and they requested a continuance of the hearing. The magistrate denied the requests, stating that a continuance was not in the best interest of the children.

{¶ 12} The magistrate proceeded with the permanent custody hearing in the parents' absence and heard testimony from the family's MCCS caseworker, the MCCS ongoing supervisor, the children's foster mother, and Paternal Grandmother. Mother's and Father's

4

attorneys indicated that they would have called Mother and Father to testify had they been able to participate by video, but counsel did not proffer the testimony that would have been given.

{¶ 13} On April 23, 2024, the magistrate granted MCCS's motions for permanent custody as to all five children. The magistrate concluded that the three older children had been in the temporary custody of MCCS for at least 12 or more months in the last 22 months prior to the filing of the permanent custody motion, and as to the twins, they could not be placed with either parent within a reasonable time or should not be placed with either parent. For all the children, the magistrate concluded that Mother and Father had continuously and repeatedly failed to substantially remedy the conditions causing the children to be placed outside their home, and permanent custody to MCCS was in the children's best interest. Both parents objected to the magistrate's permanent custody decision. Of relevance, Mother's supplemental objections argued that the magistrate had abused her discretion when she denied Mother's request for a continuance after the Zoom link did not work.

{¶ 14} On June 16, 2025, the trial court overruled the objections and granted permanent custody of the children to MCCS. Addressing the issue of the parents' motions for a continuance, the trial court concluded that the magistrate had acted within her discretion when she denied the oral request for a continuance. The trial court explained that although Mother and Father had "filed motions within days of the permanent custody hearing requesting to appear via Zoom," it appeared that they "had not gone through the proper channels to determine whether the prison and the court would be able to accommodate such a request." The trial court found that there had been "ample time given between the scheduling conference and the permanent custody hearing to make such a determination,

however due to the untimeliness of Mother and Father's filings, a video appearance was not possible."

{¶ 15} The trial court further concluded that a continuance would have created a substantial inconvenience to the children and other parties in the case. It recognized that Paternal Grandmother and others had traveled for the hearing and that asking them to come back at a later date would be a substantial inconvenience. Moreover, the court noted that a continuance would have caused a "burdensome delay" for the children, who had done well in their placement, had bonded with the foster family, and needed permanency.

{¶ 16} Mother appeals from the trial court's judgment, raising one assignment of error. Father has not appealed the trial court's permanent custody ruling.

## II. Denial of Mother's Motion for a Continuance

{¶ 17} In her assignment of error, Mother claims that the trial court abused its discretion and violated her constitutional right to due process when it denied a continuance to enable her to attend the permanent custody hearing virtually from prison.

{¶ 18} The United States Supreme Court has described parents' interest in the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Nevertheless, the "government has broad authority to intervene to protect children from abuse and neglect." *In re C.F.*, 2007-Ohio-1104, ¶ 28, citing R.C. 2151.01. Parents have a constitutional right to be present at a permanent custody hearing, but this right is not absolute if the parent is incarcerated. *In re L.C.*, 2016-Ohio-8188, ¶ 8-11 (2d Dist.).

{¶ 19} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). This discretion applies in the context of permanent custody hearings. *In re L.C.* at ¶ 29; *In re K.S.*,

6

2024-Ohio-3312, ¶ 65 (8th Dist.). Therefore, an appellate court will not reverse the denial of a continuance in a permanent custody case unless the juvenile court abused its discretion. *In re L.C.* at ¶ 29; *In re B.D.*, 2022-Ohio-2555, ¶ 19 (5th Dist.). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} We have applied the balancing test set forth in *Unger* when reviewing a trial court's denial of a continuance where a parent fails to appear for a permanent custody hearing. *In re D.K.*, 2015-Ohio-546 (2d Dist.) (applying *Unger*); *In re P.M.A.,* 2024-Ohio-1611, ¶ 16 (2d Dist.). Courts should consider (1) the length of the delay requested; (2) whether other continuances have been requested or received; (3) the inconvenience to the litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances that gave rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Unger* at 67-68. The trial court is not required to give particular weight to any factor. *In re C.B.*, 2023-Ohio-1578, ¶ 24 (8th Dist.).

{¶ 21} "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *State v. Lawson*, 2020-Ohio-6852, ¶ 26 (2d Dist.), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 22} Here, Mother's request for a continuance was occasioned by technical issues that prevented her appearance at the scheduled hearing by video. Father's counsel relayed that the juvenile court's Zoom account did not have the proper license to connect to the

prison's system, and it is unclear whether Mother's appearance by video would have been possible at all, even if a continuance had been granted. At the hearing, the magistrate indicated that counsel bore the responsibility for "setting up" the video appearance, and both the magistrate and the trial court faulted counsel for failing to ensure that video participation was possible. Nothing in the record indicates that the responsibility for obtaining the parents' video appearance fell elsewhere.

{¶ 23} The magistrate and the trial court also reasonably concluded that the interests of the children weighed heavily in favor of proceeding with the permanent custody hearing as scheduled. The three eldest children had been in MCCS's care since July 2020, and MCCS's motion for permanent custody of those children had been pending since October 17, 2022, a period of 16 months. The twins had been in MCCS's custody since shortly after their births in May 2022, and MCCS's motion for permanent custody of those two children was filed in April 2023. The motions had been pending well beyond the general 120-day deadline for holding a hearing on a motion for permanent custody. *See* R.C. 2151.414(A)(2); *In re C.W.*, 2025-Ohio-282, ¶ 52 (10th Dist.) ("Generally, a trial court does not abuse its discretion in denying a request for a continuance when the [permanent custody] hearing is already past the 120-day deadline contained in R.C. 2151.414(A)(2)."). All the children had been in the same foster home since October 2022 and had done well in that placement. The record supports the conclusion that a continuance was not in the best interest of the children.

{¶ 24} Moreover, a continuance would have been burdensome and inconvenient to Paternal Grandmother, who had a motion for custody at issue during the hearing. She had travelled from Georgia for the permanent custody hearing.

**{¶ 25}** Mother argues on appeal that a continuance would have allowed "all the evidence and options to be before the court." She emphasizes that the magistrate could have addressed Cousin's motion for legal custody along with the other pending custody motions. Cousin had traveled to Dayton from Arkansas for the February 16, 2024 hearing, but the magistrate found that he was not a proper party and, therefore, not a participant in the hearing. Cousin had not moved to intervene in the action, and his motion had not been served on all parties. Consequently, Cousin's motion was not ripe for consideration, and the magistrate reasonably proceeded without considering the motion. As for the parents' testimony, Mother's and Father's counsel indicated that they would have called the parents as witnesses had they appeared by video. But the record does not reveal what their testimony would have been, so we cannot speculate that the testimony would have affected the children's disposition.

**{¶ 26}** On this record, we cannot conclude that the trial court abused its discretion in denying Mother's motion for a continuance of the permanent custody hearing. Accordingly, Mother's assignment of error is overruled.

### III. Conclusion

**{¶ 27}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and LEWIS, J., concur.