[Cite as *In re E.H.*, 2026-Ohio-670.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: E.H.

            :

            :   C.A. No. 30592

            :

            :   Trial Court Case No. H-2023-003859-1A

            :

            :   (Appeal from Common Pleas Court-Juvenile Division)

            :

            :   **FINAL JUDGMENT ENTRY & OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 27, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

        For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

OPINION

DAWN S. GARRETT, Attorney for Appellant
JONATHAN D. MURRAY, Attorney for Appellee Montgomery County Children Services

HANSEMAN, J.

{¶ 1} Mother appeals from a judgment of the Juvenile Division of the Montgomery County Common Pleas Court that terminated her parental rights and granted permanent custody of her child E.H. to the Montgomery County Department of Job and Family Services, Children Services Division ("MCCS"). Mother challenges the trial court's denial of her motion to continue the permanent custody hearing and denial of her motions for E.H. to be placed in the custody of her great-grandmother or alleged biological father. Additionally, Mother contends that the trial court's denial of her motions and its failure to allow her to appear for the permanent custody hearing when she was incarcerated violated due process. For the reasons articulated in this decision, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 2} Mother has five children that are not the subject of the instant appeal, but they are the siblings of the child at issue, E.H. The trial court granted MCCS permanent custody of E.H.'s five siblings on June 16, 2025, and Mother appealed. On January 2, 2026, this court affirmed the judgment of the trial court. *In re J.H.*, 2026-Ohio-4 (2d Dist.).

{¶ 3} In 2022, during the pendency of MCCS's case involving E.H.'s five siblings, Mother became pregnant with E.H. Close to the time E.H. was to be born, in June 2023, Mother, a resident of Ohio, left for Niagara Falls, New York, with her husband ("Father"). Mother and Father attempted to cross the border into Canada; however, Canada denied

Mother and Father's entry. Thereafter, Mother and Father remained in Niagara Falls and were homeless.

{¶ 4} On July 4, 2023, E.H. was born at a hospital in Niagara Falls. At the time of E.H.'s delivery, Mother tested positive for marijuana. After E.H. was born, Mother and Father were arrested on outstanding warrants. An agency in Niagara Falls County, New York, took custody of E.H.

{¶ 5} On July 19, 2023, Mother and Father were extradited back to Ohio on their outstanding warrants. Approximately a month later, MCCS filed its initial complaint for dependency. In October 2023, MCCS received E.H. from New York and placed E.H. with the foster family who had custody of E.H.'s five siblings. Due to Mother's incarceration, Mother did not visit or have contact with E.H.

{¶ 6} On November 1, 2023, the trial court adjudicated E.H. dependent. On November 13, 2023, MCCS filed a motion to suspend visitation, which the trial court granted.

{¶ 7} On February 7, 2024, MCCS filed a motion for permanent custody of E.H. A permanent custody hearing was scheduled for May 3, 2024; however, the day before the hearing, Mother filed a motion to be conveyed from prison for the hearing. The permanent custody hearing was rescheduled to June 27, 2024. Prior to this hearing, Mother filed a motion to be conveyed to the hearing from custodial treatment at the Green Leaf Program in the Greene County jail or, in the alternative, to appear at the hearing remotely. The hearing was continued to August 22, 2024, due to new counsel being appointed to Father.

{¶ 8} On July 26, 2024, Mother filed a motion for E.H. to be placed in the legal custody of the child's great-grandmother, C.J. Following the motion, Mother was sentenced to a three-year term of incarceration for attempted aggravated drug trafficking. Father was also sentenced to a prison term in his criminal case. Both Mother and Father filed motions to

3

continue the August 22 permanent custody hearing, which the trial court granted. The trial court rescheduled the hearing to November 5, 2024.

{¶ 9} In the continuance order, the trial court expressly ordered that if Mother or Father needed to be conveyed to court for the hearing, they needed to file a motion for conveyance no later than October 4, 2024. The court also ordered any pretrial motion to be filed seven days prior to the hearing. Additionally, the court stated: "Parties in this case shall appear in court at said date and time. Failure of any party to appear may result in the court taking action that could adversely affect their legal rights."

{¶ 10} On October 24, 2024, 20 days after the expiration of the time for filing a motion to convey, Mother filed a motion to convey her to court for the permanent custody hearing. In the motion, Mother alternatively requested to appear at the hearing remotely. At this point in time, Mother had been terminated from the Green Leaf Program and sentenced back to prison until 2026.

{¶ 11} Six days before the permanent custody hearing, Mother filed a motion for J.D. to obtain legal custody of E.H. Mother alleged J.D. was the biological father of E.H. but did not provide results of paternity testing. Mother was married to Father when E.H. was born. Father is presumed to be biological Father of E.H., not J.D.

{¶ 12} The permanent custody hearing went forward on November 5, 2024, and Mother was not present at the hearing. Mother's counsel requested a continuance. The magistrate noted that Mother's motion for conveyance was untimely and that a Zoom link was sent on November 1, 2024, so the magistrate denied Mother's motion to continue the hearing.

4

{¶ 13} Regarding Mother's motions for custody to be granted to either E.H.'s great-grandmother or J.D., the magistrate denied the motions. The magistrate reasoned that those individuals were not parties to the case and that they had not filed motions to intervene.

{¶ 14} During the permanent custody hearing, MCCS called one witness, Myra L. Wheeler, who is employed as a case worker for MCCS. Wheeler testified that she had been Mother's case worker since 2022 and that Mother had not completed her case plan objectives. Wheeler testified that E.H. had been living with his siblings in the care of a foster family who wished to adopt all of Mother's children.

{¶ 15} Wheeler stated that Mother has not seen E.H. due to her incarceration and the trial court's order to suspend visits. Wheeler articulated that efforts had been made to contact E.H.'s great-grandmother, but she refused to cooperate with a criminal background check. Great-grandmother resided in Arkansas or Georgia and had no further contact with MCCS after refusing a background check. Wheeler added that J.D. had not completed a paternity test.

{¶ 16} Although Mother's counsel was present for the permanent custody hearing, counsel provided no evidence at the hearing and simply relied on his cross-examination of Wheeler.

{¶ 17} The magistrate filed a written decision on December 5, 2024, which awarded permanent custody to MCCS. Mother filed timely objections to the magistrate's decision. On August 1, 2025, the trial court overruled the objections and adopted the magistrate's decision awarding permanent custody to MCCS. The trial court also adopted the magistrate's decision denying Mother's motions for legal custody to the great-grandmother and J.D. Mother now appeals from that judgment and raises a single assignment of error for review.

5

## II.    Assignment of Error

{¶ 18} Under her assignment of error, Mother raises several arguments. She submits that the trial court erred by denying her motion to continue the permanent custody hearing. She also claims that the trial court wrongly denied her motions to have E.H. placed in the legal custody of great-grandmother or J.D. Mother contends that the trial court's denial of her motions, in combination with the failure to allow her to appear for the permanent custody hearing, violated due process.

### A. Parent's Constitutional Rights

{¶ 19} This court acknowledges that "[a] parent's relationship with his or her child is among the 'associational rights' sheltered by the Fourteenth Amendment to the United States Constitution against unwarranted usurpation, disregard, or disrespect by the state." *In re B.C.*, 2014-Ohio-4558, ¶ 17, quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996). The United States Supreme Court has stated that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, (2000). The Supreme Court of Ohio has stated:

> The rights to conceive and to raise one's children have been deemed 'essential,' [*Meyer v. Nebraska*, 262 U.S. 390, 399, (1923)], 'basic civil rights of man,' [*Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)], and '[r]ights far more precious * * * than property rights,' [*May v. Anderson*, 345 U.S. 528, 533 (1953)]. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' [*Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)]. The integrity of the family unit has

6

found protection in the Due Process Clause of the Fourteenth Amendment, [*Meyer* at 399], the Equal Protection Clause of the Fourteenth Amendment, [*Skinner* at 541], and the Ninth Amendment, [*Griswold v. Connecticut*, 381 U.S. 479, 496 (1965)] (Goldberg, J., concurring).

*In re D.A.*, 2007-Ohio-1105, ¶ 9.

{¶ 20} The Supreme Court of Ohio has long held that parents who are "suitable" have a "paramount" right to the custody of their children. *In re Perales*, 52 Ohio St.2d 89, 97 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'" *B.C.* at ¶ 19, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). "Therefore, parents must be afforded every procedural and substantive protection the law allows." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997).

{¶ 21} The due process rights provided by the Fourteenth Amendment and those provided by Article I, Section 16 of the Ohio Constitution are coextensive. *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544-545 (1941). The fundamental requisites of due process of law in any proceeding are notice and the opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "In the context of termination of parental rights, due process requires that the state's procedural safeguards ensure that the termination proceeding is fundamentally fair." *B.C.* at ¶ 17, citing *Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982).

{¶ 22} Whether procedural due process has been satisfied generally requires consideration of three distinct factors. First, the private interest that will be affected by the

7

official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

{¶ 23} However, "the natural rights of a parent are not absolute but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). "Ultimately, parental interests are subordinate to the child's interest when determining the appropriate resolution of a petition to terminate parental rights." *B.C.*, 2014-Ohio-4558, at ¶ 20, citing *Cunningham* at 106.

### B. Holding the Permanent Custody Hearing Without Mother's Attendance

{¶ 24} Mother argues that the trial court violated her due process rights when it held the permanent custody hearing without her in attendance.

{¶ 25} "Ohio courts have recognized that parents have a constitutionally protected right to be present at permanent custody hearings," but that right "is not absolute if the parent is incarcerated." *In re L.C.*, 2016-Ohio-8188, ¶ 10 (2d Dist.). "[A] trial court has discretion to decide whether to hold a permanent custody hearing without having an incarcerated parent conveyed to the hearing." *Id*.

{¶ 26} "A parent's due process right to be heard prior to termination of parental rights can be satisfied by arranging for his or her presence at the permanent custody hearing or by an alternate method of meaningful participation." *Id.* at ¶ 11, citing *In re S.A.*, 2008-Ohio-2225, ¶ 12 (2d Dist.); *In re Roque*, 2006-Ohio-7007, ¶ 18 (11th Dist.). "A parent's attorney has a duty to protect the parent's due process rights by ensuring meaningful participation at

8

the permanent custody hearing." *L.C.* at ¶ 11, citing *In re Joseph P.*, 2003-Ohio-2217, ¶ 52 (6th Dist.); *In re S.A.*, 2008-Ohio-2225, ¶ 5 (2d Dist.); *In re K.T.*, 2015-Ohio-2304, ¶ 16 (9th Dist.). "The failure to transport a parent from prison to a permanent custody hearing does not violate a parent's due process rights when: 1) the parent is represented at the hearing by counsel; 2) a full record of the hearing is made; and 3) any testimony that the parent wishes to present is presented by deposition or by other means." *L.C.* at ¶ 11, citing *In re M.R.*, 2011-Ohio-3733, ¶ 15 (2d Dist.).

**{¶ 27}** In Mother's companion case, we determined that the trial court did not abuse its discretion in holding a permanent custody hearing without having Mother conveyed for the proceedings when Mother was incarcerated and a full hearing was held with Mother's counsel present. *See*, *J.H.*, 2026-Ohio-4 (2d Dist.). Similarly, in this case, we find no abuse of discretion. Mother was represented by counsel, and counsel participated in the permanent custody hearing concerning E.H. by cross-examining caseworker Wheeler. The trial court provided counsel with an opportunity to present any other evidence for the court's consideration, and counsel declined. In motions filed before the trial court, Mother's counsel stated that Mother loved her child. That evidence was before the court for consideration.

**{¶ 28}** Additionally, the trial court attempted to have Mother appear by remote means. Although it was not the trial court's obligation to attempt to have Mother present by virtual means from prison, the trial court sent a link to Mother to appear virtually on November 1, 2024. The record does not indicate the reasons for Mother's failure to attend by remote means. Given the record before us, we find no merit to Mother's argument that due process was violated by the court's failure to hold the hearing with Mother in attendance.

9

### C. Denial of Mother's Motions to Continue the Permanent Custody Hearing

{¶ 29} Mother also argues that the trial court violated her due process rights when it denied her motion to continue the permanent custody hearing.

{¶ 30} A trial court has broad discretion in determining whether to grant or deny a parent's motion to continue a permanent custody hearing. *J.H.*, 2026-Ohio-4, at ¶ 19 (2d Dist.) An appellate court will not reverse a trial court's decision to proceed with a permanent custody hearing without the presence of the parent unless the trial court abused its discretion. *Id*. "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Id*., citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 31} In permanent custody cases, courts must be mindful of the best interest of the children and their need for stability and permanency in considering a request for continuance. *In re C.B.*, 2023-Ohio-1578, ¶ 24 (8th Dist.). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981).

{¶ 32} A court is not "required to give particular weight to any one of these factors." *C.B.* at ¶ 24, citing *In re K.H.*, 2022-Ohio-2588, ¶ 69 (8th Dist.). "'The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial

judge at the time the request is denied.'" *State v. Lawson*, 2020-Ohio-6852, ¶ 26, quoting *Ungar*, 376 U.S. at 589.

{¶ 33} In this case, the hearing was continued three separate times between May 3, 2024, and November 5, 2024. Each continuance was granted for either Mother or Father to appear. When the hearing proceeded on November 5, 2024, Mother failed to appear, and the reasons remained the same, she was incarcerated. By that time, MCCS's motion for permanent custody had been pending beyond the 120-day deadline for holding the hearing. *See* R.C. 2151.414(A)(2); *In re C.W.*, 2025-Ohio-282, ¶ 52 (10th Dist.) ("[g]enerally, a trial court does not abuse its discretion in denying a request for a continuance when the [permanent custody] hearing is already past the 120-day deadline contained in R.C. 2151.414(A)(2)"). Further, by November of 2024, E.H. had been in the same foster home with his five siblings since October 2023 and was doing well in that placement. At the hearing, the trial court agreed with MCCS that the hearing must go forward for purposes of E.H.'s permanency.

{¶ 34} The record also supports the conclusion that Mother's own conduct contributed to the denial of her continuance. The trial court's August 22, 2024 order required any motion to be conveyed to be filed no later than October 4, 2024. Mother's motion to convey was not filed until October 24, 2024—20 days late. Additionally, had Mother successfully completed the Green Leaf Program, she may not have been in prison at the time of the November 5, 2024 hearing.

{¶ 35} In Mother's companion case, we considered similar arguments and circumstances and determined that the trial court did not abuse its discretion in failing to grant a continuance to Mother of the permanent custody hearing regarding her other five children. *J.H.*, 2026-Ohio-4 (2d Dist.). In separately considering the circumstances

11

presented to the trial court regarding E.H.'s case, we cannot determine that the trial court abused its discretion and violated Mother's due process rights by failing to grant a fourth continuance.

### D. Denial of Mother's Motion to Place E.H. in the Legal Custody of His Great-Grandmother or Alleged Biological Father

{¶ 36} Finally, Mother argues that the trial court violated due process and abused its discretion when it denied and dismissed her motions for legal custody to great-grandmother and J.D., the alleged biological father of E.H.

{¶ 37} A trial court's judgment regarding a motion for legal custody will not be reversed on appeal unless it can be determined that the trial court abused its discretion. *In re G.D.*, 2023-Ohio-1913, ¶ 10 (2d Dist.), citing *In re L.H.*, 2021-Ohio-3521, ¶ 21 (2d Dist.).

{¶ 38} Under R.C. 2151.353, if a child is adjudicated as abused, neglected, or dependent, a trial court's dispositional options include committing the child to the temporary custody of a relative residing within or outside the state or with any other person approved by the court. R.C. 2151.353(A)(2)(d) and (f). The statute also authorizes the court to award legal custody of the child to "any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." R.C. 2151.353(A)(3). A proposed legal custodian may not be awarded legal custody of the child unless the proposed legal custodian signs a statement of understanding for legal custody that contains the statutorily required provisions of R.C. 2151.353(A)(3)(a) through (d). R.C. 2151.353(A)(3).

{¶ 39} This court has held that the consideration of whether a child can be placed with a relative is not a statutory requirement. *In re F.C.*, 2010-Ohio-3113, ¶ 24 (2d Dist.).

12

Instead, "that possibility is a matter that ought to be considered in connection with the child's interaction and relationship with the child's parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child." *Id.*, citing R.C. 2151.414(D)(1)(a). Accordingly, a trial court has no obligation to consider placing a child with a relative. *In re E.S.*, 2017-Ohio-219, ¶ 59 (2d Dist.). Unlike biological parents, other relatives or friends seeking placement are not afforded special status or presumptive rights. *Id.*

{¶ 40} We find on this record that the trial court did not abuse its discretion in dismissing and denying Mother's motion for legal custody to great-grandmother. Though the parties discuss intervention in their briefs, we hold that intervention was not required because great-grandmother did not file her own motion. Regardless, the evidence before the court was that great-grandmother lived out of state. Caseworker Wheeler testified that her supervisor made a phone call to great-grandmother, which resulted in great-grandmother refusing to cooperate with a criminal background check and terminating the call. After the phone conversation, great-grandmother did nothing to contact Wheeler or any other person regarding E.H. There is no evidence to suggest that great-grandmother had any contact with E.H. during his lifetime. Further, great-grandmother did not sign a statement of understanding for legal custody containing the provisions required by R.C. 2151.353(A)(3)(a) through (d).

{¶ 41} For the same reasons, there was no abuse in discretion in denying the motion for custody to J.D., the alleged biological father. The evidence before the trial court was that he had not had any contact with E.H. since the child's birth. In addition, J.D. did not sign a statement of understanding for legal custody containing the provisions required by R.C. 2151.353(A)(3)(a) through (d). There is no evidence in the record that established that

13

paternity testing was completed or that J.D. cooperated with Wheeler or MCCS in any way. As Mother was married to Father at the time of E.H.'s birth, Father was presumed to be E.H.'s biological father; J.D. was not. R.C. 3111.03.

**{¶ 42}** Based on the record before this court, we cannot conclude that the trial court violated Mother's due process rights or abused its discretion when it denied Mother's motions for legal custody to great-grandmother and J.D.

**{¶ 43}** Mother's assignment of error is overruled.

### III. Conclusion

**{¶ 44}** Having overruled Mother's assignment of error, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.

14